Andres M. MARTINEZ, Plaintiff–Appellant,

v.

G.D. STANFORD; W. Owen; M. Atkinson; D. Rockholt; J. Stovall, Defendants–Appellees.

No. 01–56496.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2002.

Filed March 26, 2003.

Elizabeth A. Barranco, El Cajon, CA, for the plaintiff-appellant.

Richard D. Wolfe, Deputy Attorney General, San Diego, CA, for the defendants-appellees.

Before: HALL, THOMPSON and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge.

Andres M. Martinez appeals the district court's grant of the Calipatria State Prison correctional officers' renewed summary judgment motion on his 42 U.S.C. § 1983 claim. Martinez claims that the correctional officers violated his Eighth and Fourteenth Amendment rights by using excessive force against him while breaking up a prison fight in an adjacent cell. We must decide whether summary judgment was erroneously granted, despite the failure of Martinez's counsel to file a timely opposition to the officers' motion and the existence of a local rule indicating that such failure may constitute consent to the granting of a motion. Because a district court may grant summary judgment on the basis of the moving papers and "such other papers as may be on file and specifically referred to," *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001), and because the motion papers here specifically referred to records demonstrating genuine issues of material fact defeating summary judgment, we must reverse.

## I. BACKGROUND

On April 23, 1994, a skirmish broke out in the cell adjoining that of Martinez in Calipatria State Prison's Administrative Segregation Unit. The correctional officers called to the scene used pepper spray to disperse the fight. In response, Martinez

and his cellmate attempted to block entry of the noxious gas by covering the opening of their cell with a bed sheet.

Almost all of what happened next is disputed. According to the officers, Martinez and his cellmate proceeded to barricade their door with a mattress. Despite this "barricading," the officers saw either Martinez or his cellmate brandishing a homemade weapon. (Two such weapons were later found in the cell.) Martinez and his cellmate then "gassed" the officers, a term used to describe an inmate throwing human waste at correctional officers. The officers demanded that Martinez and his cellmate remove the mattress and submit to handcuffing, and when they refused, the officers fired two plastic bullets and a "taser" cartridge into their cell. During the ensuing "extraction process," the officers claim that Martinez violently resisted, and began punching and kicking the officers, who finally managed to subdue him. Martinez and the other inmates were then sent to be medically examined. The extent of Martinez's injuries is not in dispute: he sustained a small laceration to his left leg, a small laceration to his left middle finger, an abrasion to the right side of his head, a small bruise to his right knee, and red welts to his back.

Martinez's version of this incident is strikingly different. He denies using anything but a bed sheet to cover his cell door. He denies that he or his cellmate "gassed" the correctional officers. Rather, when asked to remove the sheet from his door, he explained to the officers that the sheet had been placed there to prevent the noxious pepper spray fumes from entering his cell, and that he would remove the sheet when the fumes dissipated. While Martinez admits that there had been, in fact, homemade weapons in his cell hidden in a mattress, he vehemently denies that he or his cellmate ever "brandished" these weapons, or even that either of them had such a weapon on or near their persons at any time during the incident. According to Martinez, after he told the officers the sheet would be removed when the fumes were gone, the officers fired two plastic bullets from a gas gun and one taser cartridge into the cell. One of the plastic bullets struck him on the head. Once the officers entered the cell, they pushed him into a seated position, and tasered him twice on his left arm, despite his lack of resistance. The officers then beat him with their fists and a wooden baton on his head, torso, and legs. After they had handcuffed Martinez, one of them kicked him in the shoulder, and another hit him on his back with a baton four or five times. He was then "dragged" out of his cell and taken to the infirmary.

## II. PROCEDURAL HISTORY

On February 14, 1996, Martinez filed a lawsuit under 42 U.S.C. § 1983 against the officers alleging that they violated his constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments. The officers moved to dismiss Martinez's suit as untimely, and the district court agreed, but we reinstated the lawsuit, holding that the relevant statute of limitations had been tolled. *See Martinez v. Gomez*, 137 F.3d 1124 (9th Cir.1998) (per curiam). The officers next moved to dismiss for failure to state a claim. The district court granted the officers' motion with respect to defendants Gomez, Prunty, and Cuevas, but denied it as to defendants Mudra, Stanford, Owen, Atkinson, Rockholt, and Stovall. The remaining officers then filed a motion for summary judgment on the ground of qualified immunity. Martinez filed his opposition on April 19, 1999. On May 7, 1999, the district court granted the officers' motion as to defendants Davis and Mudra, but denied it as to the other defen-

dants, finding a genuine issue of material fact.

On June 22, 2001, less than one month before the trial was scheduled to commence, the remaining officers requested leave to renew their motion for summary judgment on the ground of qualified immunity, specifically based on the Supreme Court's then—recently announced decision in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The district court granted this request, and the officers filed their summary judgment motion on July 30, 2001. The court set a hearing date for August 27, 2001, but ordered that there would be no oral argument and that any opposition be filed no later than August 13, 2001. On the scheduled hearing date Martinez submitted his request for leave to file an opposition along with an opposition.

What happened on August 27–28, 2001 is in dispute. Martinez's attorney declares that she assumed that the officers' motion would be denied because *Saucier* did not establish the officers' qualified immunity as a matter of law. She explains that she did not submit an opposition because it was her understanding of the Federal Rules of Civil Procedure, the local court rules, and applicable case law that a non-moving party need not respond to a summary judgment motion insufficient on its face to sustain judgment. She believed that the district court would either deny the motion in open court on the date of the hearing, or if inclined to grant the motion, would permit her to file an opposition at that point. When she arrived at the court on the day the hearing was scheduled, she was told by the district judge's law clerk that the judge was planning to grant summary judgment, but that if she wished to file an opposition, she should file it by the end of the day. She therefore prepared an *ex parte* application for leave to file a late opposition to the summary judgment motion, along with a short opposition reiterating Martinez's earlier arguments and distinguishing *Saucier* from the facts of Martinez's case. She filed it prior to the close of judicial business on the same day.

By that time, however, the district court had issued its order granting the officers' motion for summary judgment. The order is time- and date-stamped "01 August 27 P.M. 3:37." The district court cited alternative grounds for granting the motion. First, it cited the Local Civil Rules for the Southern District of California which permit a district court to construe "an opposing party['s] fail[ure] to file [its opposition] papers [not later than 14 calendar days prior to the noticed hearing, as] consent to the granting of a motion or other request for ruling by the court," S.D. Cal. Civil Local R. 7.1(f)(3)(c), pursuant to which it "deem[ed] Plaintiff's failure to oppose Defendants' motion for summary judgment as consent to its merits."

Second, in the alternative, it found "that Defendants' unopposed motion successfully demonstrates that no genuine issues of material fact remain such that summary judgment is warranted on the merits." According to Martinez's counsel, she filed a notice of appeal of the order granting summary judgment in the district court the next day. The notice of appeal bears a date-stamp indicating it was "received" by the district court on August 28, 2001, but also a conflicting date-stamp indicating it was "filed" by the district court on August 27, 2001. On September 12, 2001, the district court denied as moot Martinez's *ex parte* application for leave to file a late opposition to the summary judgment motion. According to the court, because the *ex parte* motion and the notice of appeal were filed the same day, the district court was divested of jurisdiction to consider the opposition.

The officers' version of these events is much simpler: they assert that the district court granted their summary judgment motion as unopposed, before any opposition was filed. It was only later that Martinez's counsel arrived at the district judge's chambers on the hearing day and "expressed her desire to take some action with respect to filing[a] late opposition." And they agree with the district court that the *ex parte* motion was filed at the same time as the notice of appeal, depriving the district court of jurisdiction to consider the matter.

## III.  DISCUSSION

Martinez challenges each of the alternative bases for the district court's grant of summary judgment: (1) Martinez's failure to timely file an opposition in violation of a local rule, and (2) its application of *Saucier* to the facts at issue. We consider each of these grounds in turn.[1]

### A.  Failure to Oppose as Grounds for Granting Summary Judgment.

■ We agree with Martinez that the district court should not have relied on its local rule, S.D. Cal. Civil Local R. 7.1(f)(3)(c), as a basis for granting summary judgment in favor of the officers. Several of our prior decisions have made clear that a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law. Fed. R.Civ.P. 56. Short of that, we turn the summary judgment rule into a mere sanction for noncompliance with local rules. For example, in *Henry v. Gill Industries, Inc.*, we stated:

"[I]t is highly questionable that in light of the standards of Rule 56 that a local rule can mandate the granting of summary judgment for the movant based on a failure to file opposing papers where the movant's papers are themselves insufficient to support a motion for summary judgment or on their face reveal a genuine issue of material fact." ... The party opposing the motion is under no obligation to offer affidavits or any other materials in support of its opposition. Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues.

983 F.2d 943, 949–50 (9th Cir.1993) (quoting *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 n. 1 (9th Cir.1976)). In *Marshall v. Gates*, we further explained, with specific reference to the local rule at issue here:

[A] motion for summary judgment cannot be granted simply because the opposing party violated a local rule.... Here the district court's refusal to consider [the plaintiff's papers opposing summary judgment] led it to conclude that the case "contains no factual evidence other than those facts presented by defendants." This conclusion resulted in summary judgment for [the defendant]. The practical effect, therefore, was to grant summary judgment as a sanction for the late filing, a result inconsistent with our holding in *Henry* .... For violation of the local rule the district court will be free to devise such sanctions as seem appropriate short of granting summary judgment where the

---

1. We note at the outset that Martinez's counsel was remiss in failing to adhere to the district court's briefing order. She also appeared two hours late for oral argument before us. "Deadlines are inherently arbitrary; fixed dates, however, are often essential to accomplish necessary results." *United States v. Boyle*, 469 U.S. 241, 249, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). We do not condone this type of unprofessional behavior, with its attendant risk to the client's interests.

movant has failed to meet its burden of demonstrating the absence of triable issues.

44 F.3d 722, 725 (9th Cir.1995) (citations omitted). Thus, regardless of whether Martinez timely responded (or responded at all) to the officers' motion for summary judgment, we cannot affirm the district court's order unless the officers affirmatively showed that "there is no genuine issue as to any material fact and that [they were] entitled to a judgment as a matter of law" on the issue of qualified immunity. Fed.R.Civ.P. 56(c). This is a burden they did not meet because their motion papers specifically referenced materials in the record, discussed *infra*, which showed that even applying the new *Saucier* standard, material facts remained in dispute. Thus, the grant of summary judgment cannot stand on this ground, because it would improperly serve as a sanction for noncompliance with the local rules. Other sanctions may have been appropriate, but final judgment against Martinez was not.

The officers rely upon two cases, *Brydges v. Lewis,* 18 F.3d 651 (9th Cir.1994) (per curiam), and *Ghazali v. Moran,* 46 F.3d 52 (9th Cir.1995) (per curiam), for the proposition that summary judgment was a proper sanction for Martinez's failure to oppose their motion. Neither of these cases is apposite. *Brydges,* decided before *Marshall,* suggests that local rules that mandate summary judgment upon a party's failure to oppose are inappropriate, but that permissive local rules are proper. 18 F.3d at 652–53. We rejected this very distinction in *Marshall,* however, which addressed the propriety of a local rule which made discretionary imposition of summary judgment upon failure to file a timely opposition. 44 F.3d at 724. As for *Ghazali,* we explicitly limited our holding in that case to Rule 12 motions to dismiss, as opposed to summary judgment motions, and our opinion distinguished *Marshall* and *Henry* on that basis. 46 F.3d at 54

("[*Marshall* and *Henry*] do[ ] not help Ghazali. [They] address only summary judgment motions, not motions to dismiss."). Furthermore, we have repeatedly reaffirmed the *Marshall* rule. *See, e.g., Couveau v. Am. Airlines, Inc.,* 218 F.3d 1078, 1081–82 (9th Cir.2000); *Evans v. Indep. Order of Foresters,* 141 F.3d 931, 932 (9th Cir.1998) (per curiam).

## B. The Officers Were Not Entitled to Judgment as a Matter of Law.

██ The district court erred in granting summary judgment in favor of the officers because the moving papers were insufficient to support it. A district court's decision to grant summary judgment on grounds of qualified immunity is reviewed de novo. *See Sorrels v. McKee,* 290 F.3d 965, 969 (9th Cir.2002). Also, whether federal rights asserted by a plaintiff were clearly established at the time of the alleged violation is a question of law we review de novo. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1106 (9th Cir.2001). The district court correctly stated the two-part test for qualified immunity announced in *Saucier v. Katz:* (1) whether the facts alleged "show[that] the officer[s'] conduct violated a constitutional right"; and (2) whether the constitutional right in question was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see also Estate of Ford v. Ramirez–Palmer,* 301 F.3d 1043, 1050 (9th Cir.2002). It also correctly determined that Martinez alleged sufficient facts to meet the first *Saucier* prong.

██ As for the second *Saucier* prong, the law regarding a prison guard's use of excessive force was clearly established by 1994, the year in which the officers' alleg-

edly unconstitutional conduct occurred. *See Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The Court's "settled rule [is] that 'the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson,* 503 U.S. at 5, 112 S.Ct. 995 (quoting *Whitley,* 475 U.S. at 319, 106 S.Ct. 1078). In the context of quelling a prison disturbance "the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 6, 112 S.Ct. 995 (quoting *Whitley,* 475 U.S. at 320–21, 106 S.Ct. 1078). The *Hudson* Court laid out five factors to be considering in making this determination: (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 7, 112 S.Ct. 995. As for the first factor, the Court specifically instructed: "The 4344 absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.*[2]

█ The district court erred in its analysis of the reasonableness inquiry of the second *Saucier* prong because it failed to view the evidence in the light most favorable to the plaintiff, *Mabe,* 237 F.3d at 1107, and instead resolved all material disputes in favor of the officers, based on their declarations alone. The officers contend that the district court correctly considered their declarations to be uncontradicted in light of Martinez's failure to submit evidence in opposition. We have held, however, that Rule 56 requires a district court to consider the motion papers as well as such other papers in the record to which they refer. *Carmen,* 237 F.3d at 1028–31. Here, much of the evidence supporting Martinez's version of the facts, which directly contradicted the officers' on the critical *Hudson* elements, was contained in his deposition, originally attached to his opposition to the officers' earlier summary judgment motion. In their renewed motion, the officers' moving papers specifically referred to this deposition numerous times. Thus, the very evidence that the officers cited in their moving papers demonstrates that there were genuine issues of material fact. If the district court had resolved the material factual disputes in favor of Martinez, as it should have, it would have been required to deny summary judgment—even absent any opposition.

Indeed, the district court, reviewing this very evidence, had previously found a triable issue of fact on the question of excessive force, which defeated the officers' prior summary judgment motion. The same issues of fact—as to whether the degree of force used was so clearly unlawful under the circumstances as to violate established

---

2. Contrary to the officers' suggestion, the Supreme Court in *Saucier* did not modify this aspect of *Hudson.* Although the *Saucier* case involved a § 1983 plaintiff who had suffered nearly no injury—he was merely "shoved" into a van, 533 U.S. at 198, 121 S.Ct. 2151—the Court created no bright-line rule automatically granting qualified immunity in all cases where a plaintiff's physical injury can be called *"de minimis." Cf. Hudson,* 503 U.S. at 9–10, 112 S.Ct. 995 (holding that the Eighth Amendment "necessarily excludes from constitutional recognition *de minimis uses of physical force,* provided that the use of force is not of a sort repugnant to the conscience of mankind" (emphasis added)). Here, there *is* no suggestion that the officers only used a *de minimis* amount of physical force.

law—remained on the date of the order granting summary judgment. Although the law had changed, the facts in dispute bearing on the question of qualified immunity had not, and thus the district court erred in granting summary judgment.[3]

## IV. CONCLUSION

For the foregoing reasons, we RE-VERSE the district court's order granting summary judgment in favor of the officers, and REMAND to the district court for trial.

---

**3.** Because we reverse, we need not reach the issues of whether Martinez's opposition was actually timely because his counsel may have received a time extension from the district court's law clerk, or whether the district court lacked jurisdiction to consider Martinez's late opposition due to the filing of a notice of appeal.