Stewart L. GEORGEON, Plaintiff—
Appellant,

v.

CITY OF SAN DIEGO; et al.,
Defendants—Appellees.

No. 04–55929.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 17, 2006.

Decided April 17, 2006.

James E. Dunn, Esq., Attorney at Law, San Diego, CA, for Plaintiff–Appellant.

David L. Engel–Brodie, Esq., San Diego City Attorney's Office, San Diego, CA, for Defendants–Appellees.

Before: B. FLETCHER, TASHIMA, and CALLAHAN, Circuit Judges.

### MEMORANDUM *

Police arrested appellant Stewart Georgeon because they suspected that he was involved in a series of thefts; however, they never criminally charged him. Thereafter, Georgeon sued appellees the San Diego Police Department and arresting officer Julie Adams under 42 U.S.C. § 1983, alleging, *inter alia*, that the arrest violated his Fourth Amendment right to be free from unlawful search and seizure. The district court granted summary judgment in favor of appellees based on qualified immunity. We affirm.

### FACTUAL BACKGROUND

On November 26, 2001, Georgeon reported to the San Diego Police Depart-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ment ("the Department") that his friend, "T.C.", had been stealing United Parcel Service ("UPS") packages from the doorsteps of homes in La Jolla, California. The Department referred Georgeon to the Postal Inspector, who in turn, contacted San Diego police detective Julie Adams.

Sometime later, Georgeon came to the police station and explained to Adams that he had been driving around with T.C. several days earlier, when T.C. stopped at a house in La Jolla and took a package containing several pairs of shoes. Georgeon stated he did not realize that T.C. had stolen the package until later that evening, when T.C. told him that he drives around La Jolla and steals packages from the doorsteps of homes.

Georgeon told Adams that T.C. claimed to have taken packages containing numerous pairs of shoes, Christmas ornaments, a tea set, and other items. He also indicated that T.C. brought him a box containing a statue valued at approximately $7,000, and asked that he hold it for a few days. Georgeon said he realized the box was stolen after noting that the label contained another person's name and address. Adams later took possession of the stolen statue.

Over the next several weeks, Georgeon contacted Adams by telephone numerous times. He informed her about T.C.'s activities, and stated that T.C. continued to steal. He also told Adams that he had accompanied T.C. on several trips to La Jolla, during which T.C. drove by houses looking for packages. Georgeon relayed that on one occasion, T.C. asked him to hold a flashlight for him and to flash it twice if any cars came. Georgeon continued to bring other stolen items to Adams, and informed her of a swap meet where T.C. planned to sell the stolen goods. Among the items that Georgeon brought to Adams was a Christmas wreath—one of two reported stolen on November 30, 2001.

On December 5th, Adams went to T.C.'s house and saw the second wreath hanging on the back gate of the home.

Georgeon eventually told Adams that he was becoming nervous about joining T.C. on these trips. Adams responded that if he witnessed illegal activity, he should try to remember where he was and what he saw. She gave Georgeon her business card and told him that if he were contacted by authorities, he could use her name as a contact. Georgeon claims that Adams directed him to work as a "confidential informant;" however, Adams maintains that she never suggested this.

Relying on Georgeon's information, Adams arranged for T.C.'s surveillance. Although investigators followed T.C. and his wife for several days, they did not observe any illegal activity. On December 13th, Adams obtained a warrant to search T.C.'s home for stolen items, but found none. Also, the wreath was gone. In an outside storage closet on T.C.'s property, however, officers did recover an empty UPS box addressed to a La Jolla home where a compact disc shipment had been dropped, but not received.

At this point, Adams's suspicion gradually began to shift from T.C. to Georgeon because she felt that Georgeon's story did not add up. All the stolen items that officers recovered had come from Georgeon. In light of this, and Georgeon's admission that the property was stolen, Adams stated that she came to believe that Georgeon might have been involved in the thefts.

Authorities brought T.C. and his wife to the police station for questioning following the search, and requested that Georgeon come down to the station as well. When he arrived, Adams discussed her suspicions with him. She explained that his allegations did not check out, and that he was the only person admittedly in posses-

sion of stolen property. Adams asked her supervisor whether she could arrest Georgeon, and her supervisor authorized her to do so. Adams then arrested Georgeon, and although he was briefly detained, he was never criminally charged.

Georgeon argues that Adams violated his Fourth Amendment rights by arresting him without probable cause. He claims the real reason that Adams arrested him was because she became increasingly annoyed by his phone calls, and that the arrest was retaliatory.

## DISCUSSION

We review de novo the district court's grant of summary judgment. *Buono v. Norton,* 371 F.3d 543, 545 (9th Cir.2004). The determination of probable cause is a mixed question of law and fact that we also review de novo. *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). It is an affirmative defense available to government actors that involves a two-part analysis. *Martinez v. Stanford,* 323 F.3d 1178, 1183 (9th Cir.2003) (citing *Saucier v. Katz,* 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). The court first inquires whether, taken in the light most favorable to the party asserting injury, the facts show that the government actor's conduct violated a constitutional right—in this case, Georgeon's Fourth Amendment right to be free from search and seizure absent probable cause. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If not, the inquiry ends there, and the official is entitled to qualified immunity. *Id.* If, however, the alleged facts establish a violation, the inquiry proceeds with the question of whether the constitutional right in

question was clearly established. *Martinez,* 323 F.3d at 1183.

## A. Probable Cause

Probable cause exists when, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability" that a crime was committed. *Gasho v. United States,* 39 F.3d 1420, 1428 (9th Cir.1994) (citation omitted). "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (citation omitted). Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information." *Saucier,* 533 U.S. at 207, 121 S.Ct. 2151 (citation omitted).

Whether Georgeon was a confidential informant is immaterial; indeed, Georgeon cited no authority and we know of none that holds that a confidential informant cannot be arrested where there is probable cause to do so. Similarly, whether Adams was annoyed by Georgeon's phone calls is inconsequential if she reasonably believed that she had probable cause to arrest him. Adams suspected that Georgeon himself was involved in the thefts because there was no evidence tying the stolen items to T.C. or corroborating Georgeon's story. While under surveillance, T.C. did not engage in any illegal or suspicious activity, and officers did not find any stolen items when they searched the home. The stolen wreath, which was hanging on the back gate outside of T.C.'s home on December 5th, was inexplicably gone just eight days later when officers searched the premises. Collectively, the stolen property presented by Georgeon and the determination that Georgeon's story did not add up, may be sufficient to establish probable cause—"a

fair probability" that a crime was committed. Even if this evidence was not sufficient to establish probable cause, however, the district court properly granted qualified immunity under the second prong of *Saucier*.

## B. Clearly Established Constitutional Right

The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his or her conduct was unlawful in the situation confronted. *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151; *see also Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir.2002). Even if an official violated a constitutional right, a reasonable but mistaken belief that his or her conduct was lawful would result in the grant of qualified immunity. Qualified immunity thus provides ample protection to all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Georgeon argues that appellees are not entitled to qualified immunity because it would be clear to a reasonable officer confronted by these circumstances that arresting Georgeon was unlawful. We disagree.

In *Graves v. City of Coeur D'Alene*, 339 F.3d 828 (9th Cir.2003), we noted that the Supreme Court has "frequently observed ... the difficulty of determining whether particular searches or seizures comport with the Fourth Amendment." *Id.* at 847 (citing *Anderson v. Creighton*, 483 U.S. 635, 644, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The Supreme Court has stated:

> [Because it is] inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, ... those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Anderson*, 483 U.S. at 641, 107 S.Ct. 3034. Additionally, we have held that officers are given immunity

> when they reasonably believe that probable cause existed, even though it is subsequently concluded that it did not, because they cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves.

*Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir.1981) (citation and internal quotation marks omitted).

In this case, a reasonable officer could conclude that Georgeon either fabricated the stories about T.C. or warned him about the surveillance and search, and/or that Georgeon might be directly involved in criminal activity because none of his story checked out. Moreover, Adams did not act capriciously, but consulted with her supervisor and received authorization to arrest. Because Adams reasonably believed that she had probable cause to arrest Georgeon under these circumstances, the district court properly concluded that she was entitled to qualified immunity.

AFFIRMED.