NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 31 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TRAVIS SCOTT KING, by and through his Guardian Ad Litem, Breanna Raymundo; BREANNA RAYMUNDO, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> DEMICHAEL DEWS; et al., <br><br> Defendants-Appellees, <br><br> and <br><br> RONALD DAVIS, Warden, <br><br> Defendant. | No. 22-15743 <br><br> D.C. No. 3:19-cv-07722-VC <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted July 10, 2023
San Francisco, California

Before: BEA, BENNETT, and H.A. THOMAS, Circuit Judges.

While serving a sentence at San Quentin State Prison, Plaintiff-Appellant

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Travis Scott King was transferred to Marin General Hospital for care. King ran from his room into the hospital hallway, and correctional officers subdued him by pinning him to the ground until hospital staff injected him with Haldol (Haloperidol), an antipsychotic medication. King is now permanently disabled. On de novo review, we affirm the district court's grant of summary judgment for correctional officer Defendants-Appellees. *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). As the parties are familiar with the facts of this case, we do not repeat them here.

First, no reasonable juror could find an Eighth Amendment violation. When correctional officers act "to resolve a disturbance . . . that indisputably poses significant risks to the safety of" surrounding personnel, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (cleaned up). In determining whether the use of force was applied maliciously and sadistically, courts assess: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The first factor favors King; he was grievously injured. But the other factors favor the correctional officers. When King ran into the hallway, he created a need for some force, as it was the officers' duty to prevent him from escaping custody. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1222 (9th Cir. 2022). In assessing how much force to use, the officers had to balance "competing concerns" regarding safety as they made "decisions in haste, under pressure, and . . . without the luxury of a second chance." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (cleaned up). Even in the light most favorable to King, the testimony of observing witnesses supports the officers' use of force and their reasonable perception of a threat. One nurse who saw King fight the officers in his hospital room testified it looked like a "brawl" and it appeared King was trying to escape. Another hospital staff member testified she had never seen anyone act as strangely as did King. A second nurse who witnessed the struggle in the hospital room testified that even with the number of people working to restrain King, he "was seemingly overpowering them." And when King and the officers moved to the hallway, nurses on the ward ran away to hide in a locked room because they were afraid. One nurse testified that she felt it was necessary to call the Marin County Sheriff's Department because the situation between King and the officers "had escalated" to "being an unsafe situation" because there was an escaping inmate at the hospital.

Finally, also in the light most favorable to King, the officers tempered the

severity of their response. The extremely serious injuries King suffered were the result of his being held prone on the ground during an ongoing struggle. During the altercation (some of which is on video in the record), King was struggling and thrashing his body in a way that caused a doctor to believe it was necessary to prescribe the immediate intramuscular injection of Haldol. The doctor who prescribed the Haldol did so because he felt it was an "emergency" and he was worried that "both [King] and the staff were in an unsafe situation." King did not merely struggle at the beginning of his encounter with the officers; he was struggling even as the Haldol was being administered. It was only after the injection that King stopped thrashing, and at that point, the officers withdrew their weight.[1] Even in the light most favorable to King, the evidence shows that force was applied in an effort to restore order in the hospital.[2]

---

[1] As the district court accurately stated: "After the injection was administered, King stopped struggling, and everyone involved in the physical restraint released their hold on him."

As the district court also accurately stated: "Prior to that time, there is no indication [the correctional officers] did anything beyond what was necessary to restore order and ensure the safety of staff and patients. No reasonable juror could infer, from the evidence presented at summary judgment, the kind of malicious intent necessary to find an Eighth Amendment violation in an emergency situation like this."

[2] For the same reasons, we affirm the district court's grant of summary judgment on Plaintiffs-Appellants' Fourteenth Amendment claims. *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

Second, we agree with the district court that even if summary judgment was not proper on the issue of whether an Eighth Amendment violation occurred, the correctional officers would be entitled to qualified immunity. Qualified immunity applies in the Eighth Amendment excessive force context. *See Hughes*, 31 F.4th at 1220. Under the doctrine, "[g]overnment officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The plaintiff bears the burden of pointing to prior case law that articulates a constitutional rule specific enough to alert these officers in this case that their particular conduct was unlawful." *Hughes*, 31 F.4th at 1223 (cleaned up). We may not define clearly established law at a high level of generality. *See City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015).

King has identified no Eighth Amendment case with comparable facts. And although King need not identify a factually comparable case if the constitutional violation was so obvious that any reasonable officer would have known they were committing such a violation, *see Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020), as the district court stated, that is not the case here.[3]

---

[3] "But here, it was not obvious that the officers needed to stop their bodyweight restraint of King earlier than they did. Until the injection was administered, King

In the light most favorable to King, there are no genuine issues of material fact, and the district court correctly applied the relevant substantive law. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

**AFFIRMED.**

---

continued to struggle. At that time, he was still located in the hallway of a public hospital, surrounded by medical personnel and, presumably, members of the public. And a reasonable officer in that situation could have interpreted his struggling as continued resistance, especially given that none of the observing doctors or nurses raised concerns about King's medical condition until the officers released their bodyweight restraint."