Rhett WILKINS Plaintiff,

v.

RAMIREZ, et al. Defendants.

No. 04CV00118–J (WMC).

United States District Court,
S.D. California.

Oct. 2, 2006.

G. Michael German, Deputy Attorney General, Office of the Attorney General, San Diego, SD.

ORDER: (1) ADOPTING IN PART MAGISTRATE JUDGE'S R & R [Doc. No. 31]; (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 20]; (3) DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE [Doc. No. 20]; (4) DENYING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE [Doc. No. 30]; and (5) CONSTRUING PLAINTIFF'S "MOTION TO DISMISS SUMMARY JUDGMENT" AS PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT [Doc. No. 30]

JONES, District Judge.

On January 16, 2004, Plaintiff Rhett Wilkins ("Plaintiff"), a state prisoner proceeding *pro se*, filed a Complaint with this Court alleging that prison officials violated his civil rights pursuant to 42 U.S.C. § 1983. [Doc. No. 1.] Before the Court are Defendants Ramirez et. al.'s ("Defendants") Motion for Summary Judgment and Motion to Strike. [Doc. No. 20.] Plaintiff has filed an Opposition,[1] and Defendants have filed a Reply. [Doc. Nos. 30, 28.] Magistrate Judge William McCurine Jr. has filed a Report and Recommendation ("R & R") advising the Court to grant Defendants' Motion for Summary Judgment, to grant Defendants' Motion to Strike Plaintiff's punitive damages claim, and to deny Defendants' Request for Judicial Notice. [Doc. No. 31.] Neither party has filed an Opposition to the R & R. The Court reviewed the papers filed, determined that the issues presented were appropriate for decision without oral argument, and vacated the hearing date. *See* S.D. Cal. Civ. R. 7 (2006). For the reasons set forth below, the Court (1) **ADOPTS IN PART** the R & R, (2) **GRANTS** Defendants' Motion for Summary Judgment, (3) **DENIES** without prejudice Defendants' Motion to Strike, and (4) **DENIES** Defendants' Request for Judicial Notice.

## Background

### I. Plaintiff's Version of the Facts

Plaintiff is a state prisoner incarcerated at Richard J. Donavan Correctional Facili-

---

1. Due to the liberal construction policy of pro se motions, the Court has an obligation to construe a pro se petition to the petitioner's advantage. *See United States v. Seesing*, 234 F.3d 456, 463 (9th Cir.2000); *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir.2000). Thus, although Petitioner entitled his filing as a "Motion to dismiss summary judgment," this Court **CONSTRUES** Plaintiff's papers as an Opposition to Defendants' Motion for Summary Judgment for Plaintiff's advantage. [Doc. No. 30.] Plaintiff filed his papers on November 17, 2005, within the briefing schedule for filing an opposition, which was not due until November 21, 2005. (*See* Order Extending Time at 3.) Additionally, Plaintiff did not file any other papers in this time period that can be construed as an Opposition. More importantly, Petitioner sets forth various arguments in his papers that strongly suggest he intended to oppose Defendants' Motion for Summary Judgment. (*See* Pl.'s Opp'n at 7, 10.)

ty ("RJD") in San Diego, California. (*See* German Decl. Ex. A at 3–4; *see also* Defs.' Mot. Summ. J. at 1.) The alleged civil rights violations occurred on September 17, 2003, when the Correctional Treatment Center ("CTC") at RJD was evacuated for a fire drill. (*See* Pl.'s Compl. at 7.) Plaintiff states he was in the Central Plaza sitting on a cart watching the fire drill like he was instructed to do by Registered Nurse ("RN") Denason. (*See id.*) Defendant Correctional Officer ("C/O") Lyman–Clark called Plaintiff over to him and told Plaintiff to stop looking at the women participating in the fire drill. (*See id.*) C/O Lyman–Clark reprimanded Plaintiff and told Plaintiff to go back to where he was sitting. (*See id.*) Shortly afterwards, C/O Lyman–Clark again called Plaintiff over and reprimanded him for allegedly leering at the women. (*See id.*) Plaintiff asserts that he responded that he was not looking at the women, and told C/O Lyman–Clark, he had "been working with them for 10 months, they don't mean anything to me, I have a wife [and] kids." (Pl.'s Compl. at 7.)

According to Plaintiff, this response angered C/O Lyman–Clark, who then told Plaintiff to put his hands behind his back. (*See* Pl.'s Compl. at 7.) Plaintiff complied, and C/O Lyman–Clark escorted Plaintiff about five feet, at which point Defendant C/O Bernal came over and began escorting Plaintiff. (*See id.*)

Plaintiff asserts that C/O Bernal suddenly threw Plaintiff on the ground and started beating him for no apparent reason. (*See* Pl.'s Compl. at 7.) Plaintiff further alleges that Defendants C/Os Diaz, Tablos–Espinoza, Lt. Shelar, Sgt. Beauchemin, and MTA Wilson, all jumped on Plaintiff, beat him, and sprayed Oleresin Capsicum ("O.C.") spray his face. (*See id.*) Afterwards, Plaintiff claims that C/O Ramirez took him to the CTC, handcuffed

his hands and legs, and beat him. (*See id.*) Plaintiff states that he requested medical attention for his head injury several times when he was in administrative segregation, and a doctor did not evaluate him or take x-rays during the three months he was in segregation. (*See* Pl.'s Compl. at 8.)

Plaintiff also points out that he was ultimately found "not guilty" for resisting staff and battery. The Rules Violation Report, which Plaintiff has provided as an exhibit, concludes that Plaintiff is not guilty because "this incident was a result of Inmate WILKINS' mental health condition, in that he was not taking his prescribed medications." (Pl.'s Opp'n Ex. L.)

Finally, Plaintiff asserts that he made various 602–Inmate Appeal Requests, which were not answered, and that staff refused to give him copies of the 837–Crime/Incident Reports. (*See id.*)

## II. Defendants' Version of the Facts

Defendants' version of events differs from Plaintiff's. According to Defendants, C/O Lyman–Clark repeatedly asked Plaintiff to stop leering and making lewd gestures, i.e., holding his crotch, at the female staff conducting the fire drill. (*See* Cob Decl. Ex. G at 20.) Plaintiff's alleged response was, "I'll do what the fuck 1 want to." (Cobb Decl. Ex. G at 21.) C/O Lyman–Clark ordered Plaintiff to show his identification card, which Plaintiff refused to do. (*See* Cobb Decl. Ex. G at 21.) When C/O Bernal observed the interaction between C/O Lyman–Clark and Plaintiff, C/O Bernal told Plaintiff to place his hands behind his back. (*See id.*) C/O Bernal then began to escort Plaintiff to the Watch Office. (*See id.*)

According to Defendants, when C/O Bernal and Plaintiff approached the walkway in front of the Watch Officer, Plaintiff began to resist and pulled free of C/O Bernal's grip. Plaintiff then allegedly

turned to strike C/O Bernal with his el-bow.[2] (*See id.*) C/O Bernal grabbed Plaintiff with both arms around his upper torso, and both men fell to the ground. (*See id.*)

At this point, Lt. Shelar and C/O Ly-man–Clark responded to assist C/O Ber-nal. (*See* Cobb Decl. Ex A at 6.) C/O Lyman–Clark tried to restrain Plaintiff by holding his right arm, but Plaintiff grabbed C/O Lyman–Clark's right hand and squeezed and twisted his middle and ring fingers. (*See* Cobb Decl. at 21.) Al-though C/O Lyman–Clark ordered Plain-tiff to stop resisting, Plaintiff continued to struggle. (*See id.*)

Sgt. Beauchemin and C/O Wilson re-sponded to the incident by placing leg restraints on Plaintiff. (*See* Cobb Decl. Ex. B at 12; Cobb Decl. Ex. C at 13–14.) At the same time, C/O Diaz and C/O Tab-las–Espinoza also approached to assist offi-cers in placing handcuffs on Plaintiff. (*See* Cobb Decl. Ex. E at 18.)

While C/O Bernal was laying on Plaintiff to hold him still, Plaintiff allegedly bit C/O Bernal's left arm. (*See* Cobb Decl. Ex. B at 12; Cobb Decl. Ex. C at 13–14.) C/O Bernal yelled out, "he's biting me!" and C/O Diaz administered a one second burst of O.C. spray in Plaintiff's face. (*See* Cobb Decl. Ex. E at 18.) At C/O Lynman–Clark's request, C/O Diaz did not spray Plaintiff again. (*See* Cobb Decl. Ex. G at 24.) Plaintiff stopped biting C/O Bernal, but continued to resist until C/Os Shelar, Beauchemin, and Lyman–Clark hand-cuffed Plaintiff. (*See* Cobb Decl. Ex. A at 6.)

C/O Hobbs then escorted Plaintiff to the CTC for medical treatment and O.C. spray decontamination. (*See* Cobb Decl. Ex. H at 25.) At CTC, RN Belger evaluated Plaintiff, finding that he suffered an "abra-sion on [the right] cheek, rib pain, [and a] small cut inside [his] lower lip." (Cobb Decl. Ex. I at 26.) C/O Skelton photo-graphed Plaintiff's injuries. (*See* Cobb Decl. Ex. F at 19.) After Plaintiff was evaluated, C/O Hobbs escorted Plaintiff to the administrative segregation housing unit. (*See* Cobb Decl. Ex. H at 25.) Plaintiff received several subsequent chec-kups where he complained about having headaches and was proscribed medication for his injuries. (*See generally* German Decl. Ex. B.)

### III. Procedural History

On January 16, 2004, Plaintiff filed a Complaint in this Court pursuant to the Civil Rights Act, 42 U.S.C. § 1983, against Defendants C/O Bernal, C/O Diaz, C/O Lyman–Clark, C/O Ramirez, C/O Tablos–Espinoza, Lt. Shelar, Sgt. Beauchemin, MTA Wilson, and Warden Hernandez. [Doc. No. 1.] Plaintiff in his Complaint alleges the following: (1) Defendants vio-lated Plaintiff's Eighth Amendment right to be free from cruel and unusual punish-ment by kicking and beating him, (2) De-fendants violated Plaintiff's due process rights by not answering his inmate appeal requests, and (3) Defendants violated Plaintiff's due process rights by not ad-dressing his serious medical needs. (*See* Pl.'s Compl. at 2–5.)

On March 23, 2004, this Court granted Plaintiff's request to proceed *in forma paurperis*. [Doc. No. 5.] On October 29, 2004, Defendants filed their answer. [Doc. No. 12.] On January 21, 2005, Plaintiff requested appointment of counsel. [Doc.

---

**2.** As of August 29, 2005, C/O Bernal has not submitted an Incident Report due to him be-ing on an extended sick leave. (*See* Cobb Decl. at 3.) However, multiple Incident Re-ports confirm C/O Bernal's presence during the incident described above. (*See* Cobb Decl. Ex. A at 6; *see also* Cobb Decl. Ex. G at 21.)

No. 15.] Magistrate Judge McCurine denied Plaintiff's request for appointment of counsel without prejudice on January 21, 2005, finding no exceptional circumstances warranting appointment of counsel. (*See* Order Den. Appt. of Counsel at 2.)

On March 18, 2004, Defendants filed a complaint against Plaintiff in the Superior Court of California, County of San Diego South County Division, claiming three counts of battery stemming from the September 17, 2003, incident. (Pl.'s Opp'n Ex. H at 3.) The Superior Court dismissed the Complaint, apparently for "insufficiency of evidence." (*Id.*)

On August 31, 2005, Defendants filed a Motion for Summary Judgment, a Motion to Strike Plaintiff's request for punitive damages, and a Request for Judicial Notice. [Doc. No. 19, 22.] In support of their Motion for Summary Judgment, Defendants filed declarations by Deputy Attorney General Michael German and Lt. Robert Cobb along with multiple exhibits, including Incident Reports completed by Defendants and RJD Staff. (*See* Defs.' Mot. Summ. J. at 2.)

On September 29, 2005, Plaintiff requested an extension of time to respond to Defendants' Motion for Summary Judgment, which the Court granted. [Doc. Nos. 25, 26]. Additionally, the Court provided notice to Plaintiff pursuant to *Rand v. Rowland,* 154 F.3d 952 (9th Cir.1998) (en banc), and *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir.1988), which require that special notice be given to *pro se* prisoners that the defendant has moved for summary judgment. [Doc. No. 26.] Plaintiff then filed an Opposition, and Defendants filed a Reply. [Doc. Nos. 28, 30.]

On January 17, 2006, Magistrate Judge McCurrine issued a R & R recommending that Defendants' Motion for Summary Judgment be granted, Defendants' Motion to Strike be granted, and Defendants' Request for Judicial Notice be denied without prejudice. [Doc. No. 31.] On February 9, 2006, Plaintiff filed a Motion to Extend Time to Object to the R & R. [Doc. No. 33.]

On April 13, 2006, Plaintiff filed a Motion to Voluntarily Dismiss Plaintiff's case without prejudice. [Doc. No. 36.] On April 18, 2006, this Court denied Plaintiff's Motion to Voluntarily dismiss, and granted Plaintiff's request for an extension until May 26, 2006, to file an Objection to the R & R. [Doc. No. 37.] To date, Plaintiff has not filed any Objections to the R & R.

### Legal Standard

### I. Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure on "all or any part" of a claim where there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (2006); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *See id.* at 323–24, 106 S.Ct. 2548. A fact is material when, under the governing substantive law, the fact might affect the outcome of the case. *See Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. When making its determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S.

574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party can satisfy this burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *See id.* at 322–23, 106 S.Ct. 2548. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets the initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Thus, "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216, 1221 (9th Cir.1995) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505); *see also Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348 (if the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts"). Moreover, it is insufficient for the party opposing summary judgment to "rest upon the mere allegations or denials of [his or her] pleading." Fed.R.Civ.P. 56(e). Rather, the party opposing summary judgment must "by [his or her] own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed. R. Civ. P 56(e)).

Furthermore, a court is not obligated "to scour the records in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (citing *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995)). "[T]he district court may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001).

## II. Reviewing a Magistrate Judge's R & R

In deciding a Motion for Summary Judgement in connection with a magistrate judge's R & R, a district court must "make *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b) (2006); *see also United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("[I]n providing for a '*de novo*' hearing, Congress intended to permit whatever reliance a district judge, in exercise of sound discretion, chose to place on a magistrate's proposed findings and recommendations.")

■■■ When no objections are filed to the R & R, as is the case here, the district court may assume the correctness of the magistrate judge's findings of fact and decide the motion based on the applicable law. *See Campbell v. U.S. Dist. Court,* 501 F.2d 196, 206 (9th Cir.1974). The U.S. Court of Appeals for the Ninth Circuit has held that, under such circumstances, "a failure to file objections only relieves the

trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo.*" *Barilla v. Ervin,* 886 F.2d 1514, 1518 (9th Cir.1989) (citing *Britt v. Simi Valley Unified Sch. Dist.,* 708 F.2d 452, 454 (9th Cir.1983)), *overruled on other grounds by Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1174 (9th Cir.1996).

## Discussion

### I. Defendants' Motion for Summary Judgment

Defendants have moved for Summary Judgment as to all of Plaintiff's claims based on the following arguments: (1) Plaintiff has provided no proof to support his Eighth Amendment excessive force claim; (2) Plaintiff cannot show Defendants were deliberately indifferent to Plaintiff's medical needs; (3) Plaintiff does not have a protected due process right in a prison grievance procedure; (4) Defendants have qualified immunity from Plaintiff's claims; and (5) Plaintiff has improperly named Warden Hernandez and C/O Ramirez as Defendants. The Magistrate Judge in his R & R recommends granting summary judgment as to all of Plaintiff's claims. (*See* R & R at 1.) Plaintiff has not filed any objections to the R & R. For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### A. Eighth Amendment Excessive Force Claim

In the Motion for Summary Judgment, Defendants argue that Plaintiff cannot produce relevant, competent, and admissible evidence to prove that Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punish-

ment. (*See* Defs.' Mem. Supp. Mot. for Summ. J. at 5.) Defendants also argue that as government officials, they have qualified immunity. (*See id.* at 9.) In response, Plaintiff asserts that he suffered a significant blow to the head and that "officers acted in a malicious and wanton fashion." (*See* Pl.'s Opp'n at 7, 10.) To support his argument, Plaintiff points to medical reports (*see* Pl.'s Opp'n Ex. I at 1; Defs.' Mot. Summ. J. Cobb Decl. Ex. I at 26), a not guilty finding for Plaintiff as stated in the Rules Violation Report CDC–115 (*see* Pl.'s Opp'n at 4, *see also* Pl.'s Opp'n Ex. G), and the dismissal of the criminal charges against Plaintiff for battery of the C/Os (*see* Pl.'s Opp'n Ex. H). In addition, Plaintiff states that "a medical staff member alleged unnecessary and excessive force was utilized by staff during this incident."[3] (*See* Pl.'s Opp'n at 6, 11; Cobb Decl. Ex. P at 37; Cobb Decl. Ex. Q at 48.) For the reasons stated below, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment claim.

■ The Supreme Court in *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing *Whitley,* 475 U.S. at 320–21, 106 S.Ct. 1078) held that the "settled rule [is] that 'the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" The relevant inquiry for determining whether prison officials accused of using excessive physical force inflicted "unnecessary and wanton pain" is whether force was applied in a good faith effort to maintain or restore discipline, or, instead, was applied maliciously and sadistically for the very purpose of causing harm. *See id.* at 6, 112

---

**3.** Although Defendants address Plaintiff's argument about the two incident reports creating a genuine issue of material fact in their

Reply brief (*see* Defs.' Reply at 2), the R & R does not address this evidence. Thus, the Court reviews this evidence *de novo.*

S.Ct. 995; *see also Martinez v. Stanford,* 323 F.3d 1178, 1184 (9th Cir.2003). To determine whether the defendant's use of force was malicious and sadistic, the *Hudson* Court laid out five factors derived from *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), for courts to consider: (1) the extent of injury suffered by an inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Hudson,* 503 U.S. at 7, 112 S.Ct. 995 (citing to *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078.) In weighing these factors, "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard … the case should not go to the jury." *See Whitley,* 475 U.S. at 322, 106 S.Ct. 1078.

### 1. Extent of Injury

 "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Hudson,* 503 U.S. at 7, 112 S.Ct. 995. Although the extent of a prisoner's injury is relevant in determining whether excessive force was used in violation of the Eighth Amendment, it is not decisive because a prisoner can state a claim even if he or she did not suffer a significant injury. *See id.* at 4, 112 S.Ct. 995. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 9, 112 S.Ct. 995. The standard for an excessive force consti-

tutional violation depends on contemporary standards of decency. *See Hudson,* 503 U.S. at 9, 112 S.Ct. 995 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident.")

Applying this rule, the *Hudson* Court held that there was an Eighth Amendment violation even though the prisoner's injuries were minor, consisting of "bruises, swelling, loosened teeth, and a cracked dental plate." *Id.* at 10, 112 S.Ct. 995. The Court based its holding on the prisoner having presented evidence weighing in favor of the other *Whitley* factors to show that the defendant officers acted maliciously and sadistically for the very purpose of causing the prisoner harm. *See id.; see also Martinez,* 323 F.3d at 1180 (holding that a prisoner, who suffered lacerations on his left leg and finger, an abrasion on his head, bruises, and red welts on his back, stated a claim under the Eighth Amendment because the prisoner provided evidence in support of the other *Whitley* factors).

Here, like the prisoners in *Hudson* and *Martinez,* Plaintiff's injuries stemming from the incident were relatively minor. RN W. Belger stated in her medical report, which was completed ten minutes after the altercation on September 17, 2003, that Plaintiff suffered an "abrasion on [the right] cheek, rib pain, [and a] small cut inside [his] lower lip." (Cobb Decl. Ex. I at 26.) Dr. Gomez evaluated Plaintiff, and prescribed Tylenol for Plaintiff's injuries. (*See* German Decl. Ex. B at 7.) As the Magistrate Judge found from reviewing the record, "subsequent visits by Plaintiff after the initial visit to the CTC show[ed] Plaintiff had no lingering head injury from the incident." (R & R at 14.)

However, viewing the facts in the light most favorable to Plaintiff, the evidence indicates that Plaintiff did suffer headaches after the incident. C/Os Shelar and Talbert noted in their Use of Force Incident Report that Plaintiff suffered a "[b]low to the head." (Cobb Decl. Ex. O at 34; Cobb Decl. Ex. P at 36.) As a result of the blow to his head, Plaintiff suffered from headaches for three-months. (*See* R & R at 14; German Decl. Ex. B at 12, 14–16.) Medical documents submitted by Defendants' in support of their Motion for Summary Judgment show Plaintiff was treated for his complaints of headaches on September 26, 2003, October 6, 2003, and October 9, 2003. (*See* R & R at 14; German Decl. Ex. B at 12, 14–15.) On November 7, 2003, an optometrist also treated Plaintiff for chronic headaches. (*See id.* at 16.) However, Plaintiff's headaches were not permanent because on December 8, 2003, Dr. Hunt evaluated Plaintiff and reported that he exhibited no symptoms. (*See id.* at 17.)

Although Plaintiff's injuries were not severe, he did suffer headaches for a three-month period. Accordingly, the Court **FINDS** that viewed in the light most favorable to Plaintiff, this factor weighs slightly in Plaintiff's favor. *See Hudson,* 503 U.S. at 10, 112 S.Ct. 995.

## 2. Need for Force

■ The Ninth Circuit has held that "the force that was applied must be balanced against the need for that force: it is the need for force which is at the heart of the [excessive force determination]." *Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1367 (9th Cir.1994). Where is no need for force, any force used is objectively unreasonable for constitutional purposes. *See P.B. v. Koch,* 96 F.3d 1298, 1303–04 & n. 4 (9th Cir.1996).

Here, there was a need for force because even viewing inferences in the light most favorable to Plaintiff, the facts show that Defendants exerted force to restrain Plaintiff, not to maliciously and sadistically inflict pain. It is undisputed that a physical altercation resulted while C/O Bernal escorted Plaintiff from the Central Plaza to the Watch Tower office. As the Magistrate Judge noted in his R & R, the incident reports consistently state that while C/O Bernal was escorting Plaintiff to the Watch Tower, Plaintiff began to struggle and allegedly turned to strike C/O Bernal. (*See* R & R at 6–7.) Moreover, Plaintiff does not dispute the following facts, which Defendants have supported with declarations: the C/Os were trying to restrain him by handcuffing and shackling his arms and leg; C/O Bernal used his hands to grab Plaintiff around the torso area and bring him to the ground (*see* Cobb Decl. Ex. G at 21); Lt. Shelar and C/O Lyman–Clark grabbed and twisted Plaintiff's arm and hand (*see id.*); and Sgt. Beauchemin and C/O Wilson tried to put leg restraints on Plaintiff (*see* Cobb Decl. Ex. B at 12; Cobb Decl. Ex. C at 13–14). Thus, the facts undisputed by Plaintiff and supported by declarations submitted by Defendants show that Defendants were exerting force to restrain Plaintiff.

In response to Defendants' argument that they were exerting force to restrain Plaintiff, Plaintiff attempts to create a genuine issue of material fact by claiming that C/O Bernal beat him for no reason. (*See* Pl.'s Compl. at 8.) However, Plaintiff's argument fails because his allegation that he was beat for no reason is not corroborated by any other testimony or other persuasive evidence. *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) ("this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony") (citations omitted). In

contrast, Defendants have submitted incident reports that all consistently state that Plaintiff was resisting.

In addition, the facts show that Defendant Diaz sprayed Plaintiff with one shot of O.C. spray to subdue Plaintiff when he was biting C/O Bernal. (*See* Cobb Decl. Ex. E by Diaz at 18; *See* Pl.'s Compl. at 7.) The Court of Appeal for the Ninth Circuit has held that in a prison, tear gas may legitimately be used in small quantities to prevent small disturbances from becoming dangerous to other inmates or personnel. *See Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.1979); *see also Clement v. Gomez*, 298 F.3d 898, 903–04 (9th Cir.2002) (holding that two bursts of pepper spray to stop fighting in a cell was not considered excessive force and did not violate prisoners' Eighth Amendment rights). Although Plaintiff does not discuss whether he bit C/O Bernal in his briefing papers, Plaintiff admits to biting a C/O in one of the exhibits he attached to his Opposition brief. Plaintiff submitted a Rules Violation Report which reports that when Plaintiff pleaded not guilty to resisting staff and battery, he stated, " '[a]n arm was across my throat and I had to bite to breathe.' " (Pl.'s Opp'n Ex. L at 8.) In addition, medical reports after the incident show C/O Bernal was treated for what appeared to be a human bite. (*See* Cobb Decl. Ex. M at 30). Thus, Plaintiff's version of the events do not contradict, but rather supports the fact that Defendant Diaz sprayed Plaintiff with O.C. spray to stop his biting of O/C Bernal.

In response to Defendants' argument that force was needed to restrain Plaintiff, Plaintiff argues that he was found not guilty by the prison for resisting officers and battery. (*See* Pl.'s Opp'n at 4.) However, Plaintiff's argument fails because Correctional Lieutenant W.F. Steele in the Rules Violation Report found Plaintiff not guilty for reasons not related to whether he actually resisted and committed battery. (*See* Pl.'s Opp'n Ex. L.) Rather, Correctional Lieutenant Steele based his decision on Plaintiff not having taken his medication. Specifically, Correctional Lieutenant Steele concluded "this incident was the result of Inmate WILKINS' mental health condition, in that he was not taking his prescribed medications." (*Id.* at 7.) Thus, Plaintiff has not offered evidence to demonstrate that there is an issue of material fact as to the need for force.

 Plaintiff also does not create a genuine issue of material fact by referencing a decision by the Superior Court of California in which prosecutors decided to not pursue Defendants' complaints of battery against Plaintiff. (*See* Pl.'s Opp'n Ex. H.) In order to show that force was needed, prison officials are not required to produce evidence rising to the level required to hold a prisoner liable for battery in a court of law. Rather, the court must determine whether in making a decision under pressure and with haste, the facts viewed in the light most favorable to Plaintiff show that Defendants saw a need for force. *See Hudson*, 503 U.S. at 6, 112 S.Ct. 995. Incident reports and reviews of the incident all consistently state that Defendants saw a need for force because Plaintiff was resisting the Officers and was biting C/O Bernal.

Even viewing inferences in Plaintiff's favor, the evidence shows that there was a need for force because Plaintiff was resisting Defendants. Thus, the Court FINDS the factor of need for force weighs against Plaintiff.

### 3. Relationship Between Need for Force & Force Used

"Whether the disturbance is a riot or a lesser disruption, correction officers must balance the need to 'maintain or restore

discipline' through force against the risk of injury to inmates." *Hudson,* 503 U.S. at 6, 112 S.Ct. 995. In analyzing the relationship between the need for force and the force used, the *Whitley* Court has emphasized that simple overreaction by an officer is not enough to establish an Eighth Amendment violation:

> [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock. The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

475 U.S. at 319, 106 S.Ct. 1078. Thus, "under the Eighth Amendment, we look for malicious and sadistic force, not merely objectively unreasonable force." *Clement,* 298 F.3d at 903.

Here, Plaintiff asserts that there is a triable issue of material fact because "a medical staff member alleged unnecessary and excessive force ... was utilized by staff during this incident." (Pl.'s Opp'n at 6.) This statement is taken from first and second reviews of the incident. (*See* Pl.'s Opp'n Ex. J, Cobb Decl. Ex. P–Q.) In his "Manager's Review—Second Level, Use of Force Incidents," Associate Warden E.A. Contreras described the steps taken by the prison to investigate the September 17, 2003, incident:

A videotaped interview was conducted by Lieutenant A. Atrushi due to injuries sustained by Inmate Wilkins, his allegations of unnecessary force utilized by Officer Lymon–Clark and *a staff member's allegations of excessive force utilized by staff during the incident.* During the interview with Inmate Wilkins he stated he requested [Correctional Treatment Center] Officer Frisch, BMW D. Hosey and SRN (A) Dennis be interviewed. All three staff were interviewed by Lieutenant Atrushi and confirmed they observed Inmate Wilkins resisting staff which resulted in the use of emergency force to restrain Inmate Wilkins. All additional reports by staff supported Inmate Wilkins did resist staff's instruction's to cease resisting which resulted in the emergency use of force.

(Cobb Decl. Ex. Q) (emphasis added). According to this review of the incident, the unidentified staff member's allegations along with Plaintiff's claims of excessive force prompted the videotape interview of Plaintiff to investigate the incident. However, after reviewing the reports and the interviews conducted, Associate Warden Contreras concluded that staff's actions during the incident were in compliance with policy, procedure and training. In his "Manager's Review—First Level, Use of Force Incidents," Correctional Captain J. Talbert also made the same finding after stating that an investigation was conducted in part because "a medical staff member alleged unnecessary and excessive force was utilized by staff during this incident." [4] (*See* Pl.'s Opp'n at 6, 11; Cobb Decl. Ex. P at 37; Cobb Decl. Ex. Q at 48.)

Upon a careful review of the record, it appears that the claim of excessive force

---

**4.** Although Defendants discuss this argument by Plaintiff in their Reply brief (Defs.' Reply at 2), the R & R does not address this evidence. Thus, the Court reviews this evidence *de novo.*

referenced in the first and second reviews was not actually made by a staff member based on his or her personal knowledge. No where in the record is there a statement directly made by a medical staff member that Defendants used excessive force, e.g., in an incident report or a medical report. Rather, the evidence indicates that the statement was made by Plaintiff to RN Belger during his medical exam right after the incident. (*See* Cobb Decl. Ex. I.) In particular, under the part of the report entitled "Brief Resume in Patient's Words of the Circumstances of the Injury or Unusual Circumstances," RN Bernal reports that Plaintiff states, "Police beat me up." (*Id.*) That the complaint was made by Plaintiff and not a staff member, as discussed further below, accounts for why none of the staff members interviewed at the request of Plaintiff supported his claim that there was excessive force.

■ However, even assuming that the statement was made by a staff member, and not by Plaintiff himself, Plaintiff's argument fails to establish a genuine issue of material fact. An allegation of excessive force by a staff member is not enough to establish an Eighth Amendment violation because objectively unreasonable force, without more, is not a violation. *See Clement*, 298 F.3d at 903. Rather, to establish an Eighth Amendment violation, the force used must have been malicious and sadistic for the very purpose of causing harm. *See id.* Here, there is no

evidence in the record that the staff member asserted that the amount of force used in light of the need for force was malicious and sadistic for the purpose of causing harm.[5]

■ Further, the allegation by the staff member does not even create a genuine issue that excessive force was used. The first and second reviews state that the identified staff member merely alleges that unnecessary and excessive force was used, but there is no evidence that the staff member provided any facts to support his or her allegation of excessive force. For example, there is no evidence in the record that the staff member stated Plaintiff was not resisting staff members, that the staff member witnessed Defendants exerting specific acts of excessive force, or that Plaintiff sustained injuries of the type indicating excessive force.

Moreover, the staff member's allegation does not create a genuine issue of material fact because it is not corroborated by any other witnesses, including medical staff members. As stated in the first and second levels of review, in response to the allegation of excessive force by Plaintiff and the unidentified staff member, Correction Lieutenant Atrushi conducted three interviews with staff members whom Plaintiff requested be interviewed, including medical staff members Senior Registered Nurse R. Dennis and Correctional Treatment Center Officer M. Frisch.

---

5. Moreover, even if Plaintiff could establish that the force used violated the Eighth Amendment; Defendants are still immune from suit due to qualified immunity. To avoid qualified immunity, a plaintiff must make the following showing: (1) defendant violated a constitutional right, and (2) the right violated was clearly established such that it would be clear to a reasonable officer that his or her conduct was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Here, even if Plaintiff's Eighth Amendment right was violated, he cannot establish that it would be clear to a reasonable officer that using excessive force to restrain Plaintiff was unlawful under the circumstances. Reasonable officers in Defendants position would exert force in response to a prisoner resisting attempts by officers to restrain him, particularly when that prisoner is biting an officer.

(Cobb Decl. Ex. P at 37; Cobb Decl. Ex. Q at 48.) However, none of the staff interviewed at the request of Plaintiff gave any statements supporting his allegation of excessive force. To the contrary, they all confirmed that "Inmate Wilkins resist[ed] staff during the escort which resulted in the need for the emergency use of force." (*See id.*) Based on these interviews and the incident reports, which consistently state that force was exerted to restrain Plaintiff as a result of his resistance, it is difficult to disagree with Officer Talbert and Warden Contreras' conclusion that "staff were in compliance with emergency use of force policy and procedures."

The allegation of excessive force by a staff member, without more, does not create a genuine issue of material fact for trial because objectively unreasonable force is not enough to establish an Eighth Amendment violation; rather, the force applied must have been malicious and sadistic. Moreover, no rational trier of fact could find for Plaintiff based on a vague, conclusory statement by an unidentified medical staff member in light of the consistent, multiple reports that Defendants used force to stop Plaintiff from resisting. Accordingly, the Court **FINDS** this element of proportionality weighs against Plaintiff.

### 4. Threat Perceived

■ Another relevant inquiry for determining whether an Eighth Amendment excessive force violation occurred is "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078. The *Whitley* Court cautioned that in weighing this factor, Courts should be mindful that "in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." *Whitley*, 475 U.S. at 320, 106 S.Ct. 1078. In addition, "[d]espite the weight of these competing concerns, corrections officers must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." *Hudson*, 503 U.S. at 6, 112 S.Ct. 995 (citing *Whitley*, 475 U.S. at 320, 106 S.Ct. 1078).

Defendants were responding to a threat posed to the security of the prison because it is undisputed that the incident began in the Central Plaza where other inmates were present as the result of a fire alarm evacuation. (*See* Pl.'s Opp'n at 6.) Plaintiff admits that the incident began when he was reprimanded by C/O Lyman–Clark to not look at the women in the Plaza, and despite the differing accounts of exactly what Plaintiff said to the C/O, both parties state that Plaintiff verbally disagreed with the instruction he was given. (*See* Pl.'s Compl. at 7; *see also* Pl.'s Opp'n at 6.) Thus, the situation was potentially dangerous to the security at RJD facility because with inmates and staff evacuated into the yard where the incident took place, Plaintiff's disagreement with staff instruction could possibly have incited other inmates. Thus, Warden Hernandez concluded in his Review of Use of Force report, "[t]he threat also existed that due to other inmates being present on the Plaza . . . they might become involved, escalating the situation to a seriously dangerous level." (Cobb Decl. Ex. R at 39.) Therefore, the Court **FINDS** that this factor weighs in favor of Defendants because they reasonably perceived a threat to prison security.

### 5. Efforts to Temper Force

During the course of the incident, officers increased the amount of force they

used in response to Plaintiff's resistance. All four reviews of the incident concluded that Defendants took reasonable steps to minimize the need for force and the level of force. (*See* Cobb Decl. Exs. O–R.) When C/O Plaintiff began to physically struggle with C/O Bernal, C/O Bernal and others repeatedly warned Plaintiff to stop resisting. (*See* Cobb Decl. Ex. G at 21–22.) Plaintiff ignored the officers' warnings, and continued to struggle; Plaintiff even admits that he bit C/O Bernal. (*See* Pl.'s Opp'n Ex. L at 8.) Multiple other C/Os approached to quell the struggle, using non-deadly force by holding Plaintiff down and trying to put shackles on his legs. (*See* Cobb Decl. Ex. B.) Once C/O Bernal shouted out that Plaintiff was biting him, C/O Diaz administered a one second burst of O.C. spray in Plaintiff's face. (*See* Cobb Decl. Ex. E.) Moreover, after Plaintiff was sprayed once, C/O Diaz did not spray Plaintiff again at C/O Lynman-Clark's request. (*See* Cobb Decl. Ex. G at 24.) Under the circumstances, the C/Os made an effort to temper the amount of force they used in response to Plaintiff's resistance. Thus, the Court **FINDS** this factor weighs in Defendants' favor.

 In conclusion, four out of five of the *Hudson* factors weigh in Defendants' favor. Thus, the evidence submitted and the facts taken in the light most favorable to Plaintiff show that the Officers did not act maliciously and sadistically for the very purpose of causing him harm. For the reasons set forth above, the Court **ADOPTS** the R & R's recommendation and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's excessive force claim.

### B. Eighth Amendment Inadequate Medical Care Claim

Plaintiff also alleges that prison officials violated his Eighth Amendment rights by delaying in providing or denying him medical care. Specifically, Plaintiff claims that a doctor did not evaluate him or take x-rays of him during the three months he was in administrative segregation. (*See* Pl.'s Compl. at 8.)

 The government has an obligation under the Eighth Amendment to provide medical care to those whom it punishes by incarceration. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "A correctional officer's deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment ban against cruel and unusual punishment. *Estelle*, 429 U.S. at 105, 97 S.Ct. 285. The plaintiff inmate must demonstrate that he or she was confined under conditions posing a risk of objectively, sufficiently serious harm that the officials had a culpable state of mind in denying the proper medical care. *See Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir.1995) (internal quotations omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment ... [m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Lopez*, 203 F.3d at 1131 (quoting *Estelle*, 429 U.S. at 104, 97 S.Ct. 285).

Courts have interpreted serious medical needs to amount to the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992) *overruled on other grounds by WMX Techs., Inc. v. Miller,*

104 F.3d 1133 (9th Cir.1997) (*en banc*); *see also Lopez v. Smith*, 203 F.3d 1122, 1131–32 (9th Cir.2000) (*en banc*).

When the alleged indifference to the inmates medical needs is based on delay, the Eighth Amendment is not violated unless the evidence suggests the delay was harmful. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir.1992); *see also Hallett v. Morgan*, 287 F.3d 1193, 1206 (9th Cir.2002) (The Eighth Amendment is only violated if "delays occurred to a patient with problems so severe that delays would cause significant harm that Defendants should have known . . . .")

Here, the evidence suggests that there was no denial or delay of medical care. Far from "deliberate indifference" to Plaintiff's medical needs, the medical evaluations conducted immediately after the incident and the follow-ups until the symptoms subsided show that Plaintiff was treated regularly and his medical complaints were addressed. Authenticated medical records document submitted by Defendants demonstrate that Plaintiff was taken to the CTC immediately after the incident for medical evaluation and treatment. (*See* Cobb Decl. Ex. I.) In fact, an RN evaluated Plaintiff directly after the incident and stated that Plaintiff's injuries were minor and his prognosis was "good." (Cobb Decl. Ex. I at 26.) Plaintiff also received check ups for his complaints of headaches on September 26, 2003, October 6, 2003, October 9, 2003, and November 7, 2003. (*See* R & R at 14; German Decl. Ex. B at 12, 14–15.) Thus, the Court agrees with the Magistrate Judge and finds no evidence showing that Defendants acted with deliberate indifference towards Plaintiff's medical needs. For the reasons stated above, the Court **ADOPTS** the R & R's recommendation and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's inadequate medical care claim.

### C. Due Process Claim Regarding Grievance Procedure

Plaintiff also alleges that his due process rights were violated because "[the prison] has not answered [his] 602 inmate appeals regarding the incident and th[e]y are way overdue." (Pl.'s Compl. at 8.) Defendants counter that Plaintiff is not entitled to relief because prisoners have no due process interest in a particular grievance procedure. (Defs.' Mem. Supp. Mot. for Summ. J. at 13.)

The Due Process Clause protects against the deprivation of liberty without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). To determine whether a due process violation has occurred, a court engages in a two-step analysis. First, a court looks to whether the person possesses a liberty interest with which the state has interfered. *See Sandin v. Conner*, 515 U.S. 472, 474, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Second, if the state has interfered with a liberty interest, a court looks to whether this interference was accomplished by sufficient procedural and evidentiary safeguards. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *see also Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir.1987).

Liberty interests may arise from the Constitution or from state law. *See Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). The Constitution itself does not confer on prisoners a liberty interest in avoiding "more adverse conditions of confinement." *Id.*; *see also Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir.1985) ("An inmate's liberty interests are sufficiently extinguished by his conviction so that the state may change

his place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another.") (citation omitted). However, a prisoner may have a liberty interest pursuant to state law. *See Sandin,* 515 U.S. at 481–84, 115 S.Ct. 2293.

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *See id.* Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. 2293. In *Sandin,* the Court concluded that a prisoner had no liberty interest against a 30–day assignment to segregated confinement because the assignment did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." In contrast, in *Wilkinson,* the Court held that indefinite placement of an inmate in Supermax prison imposed an atypical and significant hardship on inmates in relation to the ordinary incidents of prison life because it prohibited almost all human contact, required constant lighting, allowed exercise for only one hour per day, was an indefinite placement, and disqualified an otherwise eligible inmate from parole. *See Wilkinson,* 545 U.S. at 209, 125 S.Ct. 2384.

▆▆ Here, Plaintiff's three month placement in administrative segregation is more similar to the 30–day administrative segregation that was held to not be a protected liberty interest in *Sandin* than the indefinite Supermax placement in *Wilkinson.* Moreover, unlike *Wilkinson,* Plaintiff has failed to present any evidence that the conditions of confinement in administrative segregation imposed an "atypical and significant hardship." *See Sandin,* 515 U.S. at 484, 115 S.Ct. 2293. Thus,

Plaintiff has not shown that he has a protected liberty interest in not being held in administrative segregation for three months.

Moreover, even if Plaintiff has a protected liberty interest, he cannot meet the second factor required for a due process violation because he received due process for both the charges against him and his claims against Defendants. Regarding the charges against Plaintiff for battery, he was afforded a hearing as a result of the internal investigation and appeared before the Institutional Classification Committee (ICC). (*See* Pl.'s Opp'n at 4, Ex. G). A mental health report also was conducted to determine if his mental health conditions caused his behavior during the altercation. (*See* Pl.'s Opp'n Ex. C.) As a result of the process he was afforded, the Rules Violation report found Plaintiff not guilty of battery based on a mental health report that showed "the incident was a result of [Plaintiff's] mental condition . . . in that he was not taking his prescribed medications." (Pl.'s Opp'n Ex. L.)

▆▆ Contrary to Plaintiff's assertions in his Complaint, Plaintiff also was afforded due process because his CDC 602 Inmate Appeals, in which he sought relief for Defendants allegedly having assaulting him, were reviewed by the prison. Exhibits that Plaintiff attached to his Opposition show that Plaintiff received four reviews of his complaints, including an initial review by the Watch Commander, two Manager's Level reviews, and a Director's Level Decision. (*See* Cobb Decl. Exs. O–R; Pl.'s Opp'n Ex. F.) In his Director's Level Decision, Chief N. Grannis denied Plaintiff's appeal after having reviewed the documentation Plaintiff submitted and finding that "[t]he appellate has failed to provide any new or compelling information that would warrant a modification of the decision reached by the institution." (Pl.'s Opp'n

Ex. F. at 1.) Plaintiff himself even admits that he received these reviews in response to his 602 Complaints. In arguing that he exhausted all his administrative remedies, Plaintiff admits in his Opposition that he "use[d] the grievances all the way up to the Director's level appeal decision." (Pl.'s Opp'n at 12.) Although Plaintiff may disagree with Chief Grannis' decision to not grant him relief on appeal, the evidence shows that Plaintiff did receive due process for his grievances against Defendants.

Thus, Plaintiff has not presented any evidence showing that the inmate grievance process violated his due process rights. Accordingly, the Court **ADOPTS** the R & R's recommendation and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's due process claim.

### D. Qualified Immunity

Section 1983 claims against government officials may be subject to the affirmative defense of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity ensures that public officials who carry out discretionary executive or administrative functions are protected from personal monetary liability so long as their actions do not violate "federal statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727. A correctional officer is not entitled to qualified immunity where (1) "the facts alleged show that the officer's conduct violated a constitutional right," and (2) "the constitutional right in question was clearly established such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Martinez v. Stanford,* 323 F.3d 1178, 1182 (9th Cir.2003) (quoting *Saucier v. Katz,* 533 U.S. 194,

201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Here, because the Court agrees with the R & R's finding that there is no triable issues of fact regarding Plaintiff's Eighth Amendment and Due Process clams, the Court need not move to the second step of determining whether the constitutional rights in question were clearly established. *See County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Thus, the Court **FINDS** that qualified immunity applies.

### E. Dismissal of Claims Against Warden Hernandez

In opposing Defendants' argument on summary judgment that Warden Hernandez should dismissed, Plaintiff states "Warden Hernandez is over his C/Os and there training 100% See Exhibit S it will show he is over there training so there for he is responsible for them ..." (Pl.'s Opp'n at 8.) Plaintiff's Exhibit S is a memorandum for training C/Os to use a "Monandnock Expandable Baton (MEB)." (Pl.'s Opp'n Ex. S.) Thus, Plaintiff is arguing that because Warden Hernandez signed the memorandum requiring that all staff attend the training (*see* Pl.'s Opp'n Ex. S at 5), Warden Hernandez is responsible for the C/Os' conduct in allegedly beating Plaintiff. In response, Defendants argue that *respondeat superior* is not a basis for § 1983 relief.

The R & R correctly examined liability for a supervisor under § 1983, which requires "a showing of personal participation by the defendant." *Fayle v. Stapley,* 607 F.2d 858, 862 (9th Cir.1979). A supervisor is only liable for constitutional violations of his or her subordinates if he or she ordered the violations or knew of the violations and failed to intercept. *See Ybarra v. Reno Thunderbird Mobile Home*

*Village,* 723 F.2d 675, 680–81 (9th Cir. 1984).

 Here, Plaintiff sets forth no facts to show that Warden Hernandez ordered the Officers conduct against Plaintiff or knew of the conduct and failed to intercept. While the memo Plaintiff provides may show Warden Hernandez instructed Officers on how to use the expandable baton, Plaintiff does not allege that Officers used a baton during the incident. In addition, the MEB memo is dated September 23, 2005, over two years after the September 17, 2003, incident that gave rise to Plaintiff's lawsuit. Thus, the Court **ADOPTS** the Magistrate Judge's R & R recommendation, and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claim against Warden Hernandez.

### F. Dismissal of Claims Against Officer Ramirez

In his Complaint, Plaintiff makes a disturbing allegation that C/O Ramirez assaulted him after he was taken to CTC in handcuffs directly after the incident. (*See* Pl.'s Compl. at 7.) Defendants argue that Plaintiff's claims against C/O Ramirez should be dismissed because "there is no indication that Ramirez was in any way involved in any of the incidents giving rise to Plaintiff's complaint . . ." (Defs.' Mem. Supp. Mot. for Summ. J. at 13.)

It is well-settled law that to avoid summary judgment, the opposing party cannot rely solely on conclusory allegations. *See Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir.1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citing *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

Plaintiff's claim that C/O Ramirez assaulted him when he was in handcuffs, if true, may be ground for an Eighth Amendment claim of excessive force. *See Hope v. Pelzer,* 536 U.S. 730, 737, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ("[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'") However, Defendants have met their burden of establishing that there is no genuine issue of material fact that C/O Ramirez was not involved in the incident because as they point out, none of the incident reports implicate or even mention C/O Ramirez. In fact, the incident reports state that it was C/O Hobbs, not C/O Ramirez that escorted Plaintiff to CTC. (*See* Cobb Decl. Exs. A, B, D, H.) The burden then shifts to Plaintiff to establish that there is a genuine issue as to whether C/O Ramirez beat him. The only evidence Plaintiff asserts to support his claim are medical records in which he complained of headaches. However, Plaintiff has provided no evidence indicating that C/O Ramirez caused his headaches. Moreover, although Plaintiff complained of headaches, none of the medical reports found that Plaintiff sustained any head injuries from the incident.

 Thus, Plaintiff has failed to provide any evidence or to provide specific facts that support his bare allegation against C/O Ramirez. (*See generally* Pl.'s Compl.; Pl.'s Opp'n.) The Court agrees with the R & R and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claim against C/O Ramirez.

### II. Defendants' Motion to Strike

In conjunction with their Motion for Summary Judgment, Defendants also filed a Motion to Strike Plaintiff's prayer for punitive damages on the grounds that there is no evidence that Defendants acted

with evil intent. (*See* Defs.' Mot. for Summ. J at 15.)

Although the Magistrate Judge in the R & R advises granting Defendants' Motion to Strike, the Court declines to adopt this recommendation. Rather, the Court **DENIES without prejudice** Defendant' Motion to Strike on mootness grounds because the Court has granted Defendants' Motion for Summary Judgment as to all of Plaintiff's claims.

### III. Defendants' Request for Judicial Notice

On August 31, 2005, Defendants filed a Request for Judicial Notice in Support of their Motion for Summary Judgment ("Request"). [Doc. No. 22.] Defendants request that the "Court take judicial notice of the complete files and records in this action," "the exhibits to the Declarations of Michael G. German and Lt. R. Cobb" as well as "the administrative and judicial records of the state of California supplied therein . . . ." (Defs.' Req. for Judicial Notice at 1.) Plaintiff has not filed an Objection to Defendants' Request.

As the R & R correctly stated, a party may request judicial notice of certain matters in connection with a motion for summary judgment. *See* Fed.R.Evid. 201(b). Judicial notice constitutes evidence of the matters noted. *See id.* A court may take notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed.R.Evid. 201(b); *see also Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998).

As to Defendants' Request regarding the record submitted in support of their Motion for Summary Judgment, the request is over broad because the records are neither generally known to the Court or capable of easy corroboration. The documents consist mostly of medical reports and incident reports completed by prison staff, which are not readily known to the Court. Likewise, the Court cannot easily confirm the truth or accuracy of the reports.

However, on a motion for summary judgment, a court may consider "affidavits or declarations of persons with personal knowledge through whom they could be introduced at trial." *Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 883 (9th Cir.1982). Thus, a court need not take judicial notice of declarations in order to consider them on a motion for summary judgment.

Here, the declarations Defendants submitted by Michael German and Lt. Robert Cobb are based on personal knowledge, so they may be properly considered by the Court even though they do not warrant judicial notice. Michael German, Deputy Attorney General and counsel for Defendants, submitted a declaration in support of Exhibits A and B. [Doc. No. 21.] Exhibit A contains abstracts of judgments against Plaintiff, and Exhibit B consists of excerpts from Plaintiff's medical records. (*See* German Decl. at 1.) As Deputy Attorney General, Mr. German has knowledge of the judgments against Plaintiff to authenticate documents provided in Exhibit A. Additionally, as a RJD employee working in the medical records department, Rebecca Solis, has knowledge of the medical records to attest that they are correct copies from Plaintiff's medical file. (*See* German Decl. Exh B at 5.)

Lt. Cobb, Litigation Coordinator at RJD, also submitted a declaration in support of Exhibits A through R. [Doc. No. 23.] Exhibits A though R consist of crime/incident reports, medical reports of

injury or unusual occurrence, and incident review forms regarding crime/incidents that occurred at RJD. (*See* Cobb Decl. at 1.) As a Litigation Coordinator, Lt. Cobb has personal knowledge of the preparation and maintenance of these documents, and has affirmed the documents were true copies of the originals. (*See* Cobb Decl. at 1–2.) Thus, both Mr. German and Lt. Cobb's declarations are admissible for consideration on a summary judgment motion despite the fact that they cannot be judicially noticed.

For the reasons stated above, the Court **ADOPTS** the R & R's recommendation and **DENIES** Defendants' Request for Judicial Notice.

### Conclusion

In conclusion, the Court (1) **ADOPTS IN PART** the R & R, (2) **GRANTS** Defendants' Motion for Summary Judgment, (3) **DENIES without prejudice** Defendants' Motion to Strike Plaintiff's claim for punitive damages, (4) **DENIES** Defendants' Request for Judicial Notice, and (5) **CONSTRUES** Plaintiff's "Motion to dismiss summary judgment" as Plaintiff's Opposition to summary judgment.

**IT IS SO ORDERED.**

REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE, AND REQUEST FOR JUDICIAL NOTICE

MCCURINE, United States Magistrate Judge.

Defendants' summary judgment motion has been referred to Magistrate Judge McCurine pursuant to Local Civil Rule 72.3. This motion is appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). For the reasons set forth herein, it is recommended that Defendants' motion be **GRANTED** and this case dismissed with prejudice.

## I. PROCEDURAL BACKGROUND

Rhett Wilkins, (hereinafter "Plaintiff"), a state prisoner currently incarcerated at Richard J. Donovan Correctional Facility (RJD) in San Diego, California, is proceeding *pro se* and *in forma pauperis* with a Complaint filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983. In his Complaint, Plaintiff seeks injunctive relief, compensatory, and punitive damages against Correctional Officer Ramirez, Correctional Officer R. Tablas–Espinoza, Correctional Officer R. Diaz, Correctional Officer S. Bernal, Correctional Officer C. Lyman–Clark, Sgt. W. Beauchemin, Lt. R. Shelar, Medical Technical Assistant (MTA) C. Wilson, and Warden R. Hernandez, (hereinafter Defendants) based upon claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was beaten by Defendants without provocation and denied medical treatment for his injuries.

On August 31, 2005, Defendants filed a Notice of Motion and Motion for Summary Judgment and Motion to Strike. On September 29, 2005, the Court issued an order granting Plaintiff's request for additional time to file a response/opposition and provided Plaintiff with written notice of the requirements for opposing Defendant's Motion for Summary Judgment pursuant to *Rand v. Rowland,* 154 F.3d 952 (9th Cir.1998)(en banc) and *Klingele v. Eikenberry,* 849 F.2d 409, (9th Cir.1988). On November 15, 2005, the Plaintiff mailed his opposition to Defendants' motion.[1] Defen-

---

**1.** It appears that plaintiff mailed his Opposition on November 15, 2005, to both the Court

dants filed their reply on November 23, 2005.

## II. FACTUAL BACKGROUND

### a. Plaintiff's Version

On September 17, 2003, Plaintiff was in the Central Plaza when there was a fire drill. Everyone came out of the Correctional Treatment Center ("CTC"). Plaintiff was sitting on a cart watching the fire drill when Registered Nurse Denason told Plaintiff to watch the fire drill. (Complaint at p. 7). Correctional Officer ("C/O") Lyman–Clark approached Plaintiff and called Plaintiff over to where C/O Lyman–Clark was standing. Plaintiff went over to C/O Lyman–Clark and was told to stop looking at the women participating in the fire drill. Plaintiff was reprimanded and told to go back to the cart and sit down. A short time later C/O Lyman–Clark again called Plaintiff over and again reprimanded Plaintiff for looking at the women. Plaintiff responded that he was not looking at the women. C/O Lyman–Clark got angry at this response and told Plaintiff to put his hands behind his back. Plaintiff was escorted about five feet when C/O Bernal came over and began escorting Plaintiff. Suddenly, for no reason C/O Bernal threw Plaintiff on the ground and started beating him. All the other named defendants came over and also started beating Plaintiff and spraying pepper spray in his face. [Complaint at 7]. Plaintiff was again beaten by C/O Ramirez after he was taken to the CTC for medical treatment. Plaintiff was placed in Administrative–Segregation and was not treated for his injuries despite an obvious head injury and repeated requests for medical care. [Complaint at p. 8].

### b. Defendants' Version

On September 17, 2003, Plaintiff was outdoors watching a fire drill when Defendant C/O Lyman–Clark separated Plaintiff from a group of inmates and told him to stop leering and making lewd gestures (i.e. holding his crotch) at the female staff conducting the drill. Plaintiff replied "I'll do what the fuck I want to." (Crime/Incident Report, Defendants' Exhibit G at p. 20) C/O Lyman–Clark told Plaintiff a second time to again step away from the group of inmates so that C/O Lyman–Clark could again counsel Plaintiff on his inappropriate behavior. Plaintiff was ordered to show his identification card which he refused to do. C/O Bernal who had observed the interaction between C/O Lyman–Clark and Plaintiff, told Plaintiff to place his hands behind his back and C/O Bernal began to escort Plaintiff to the watch office. Plaintiff flared his arms in a threatening manner and C/O Bernal grabbed Plaintiff around his torso pinning his arms to his side to prevent further altercation. Plaintiff continued to resist. Sgt. Beauchemin and MTA Wilson tried to assist in controlling Plaintiff by placing leg restraints on him. At that point C/O Bernal shouted out "he's biting me!" Correctional Officers Tablos–Espinoza, Diaz and Lt. Shelar all responded by assisting in subduing Plaintiff. C/O Diaz fired a one second burst of pepper spray toward Plaintiff's face. At that point Plaintiff stopped biting C/O Bernal. Plaintiff was placed in handcuffs and taken to the CTC to be examined and treated for minor injuries.

## III. ARGUMENTS

Defendants claim they are entitled to summary judgment pursuant to Fed.

and Defendants. Defendants "receive stamped" their copy November 17, 2005. Due to a clerical error the Court did not file Plaintiff's Opposition until December 8, 2005.

However, to have the record reflect Plaintiff's submission was timely, the Court ordered Plaintiff's Opposition stamped *nunc pro tunc* to November 17, 2005.

R.Civ.P. 56 because: (1) Plaintiff's allegations that his Eighth Amendment right to be free from cruel and unusual punishment was violated as a result of the "beating" he received at the hands of the Defendants is unsupported by the evidence; (2) Plaintiff's claim of a due process violation based upon an alleged lack of response to his 602 inmate appeal which is part of the prison's internal grievance procedure is not cognizable under 42 U.S.C. § 1983; (3) none of the defendants were deliberately indifferent to Plaintiff's serious medical need; (4) no genuine issue of material fact exists regarding Plaintiff's allegations against Officer Ramirez for excessive force under the Eighth Amendment; and, (5) Warden Hernandez cannot be liable under 42 U.S.C. § 1983 for Defendants' alleged illegal acts on a theory of *respondeat superior.*

Defendants also argue that the Court should grant their Motion to Strike plaintiff's request for punitive damages pursuant to Fed.R.Civ.P. 12(f) because Plaintiff suffered no deprivation of his constitutional rights.

Further, pursuant to the Federal Rules of Evidence, Defendants have submitted a request for Judicial Notice of their exhibits filed in support of their motion for summary judgment.

## IV. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure authorizes the granting of a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for the granting of a directed verdict. Judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "[i]f reasonable minds could differ," judgment should not be entered in favor of the moving party. *Id.*

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir.1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, and with all reasonable inferences made in the plaintiff[ ]'s

favor, could convince a reasonable jury to find for the plaintiff[ ]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir.2000)(citing Fed.R.Civ.P. 56; *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

While the district court is "not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir.1988), *Nilsson v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir.1988), the court may nevertheless exercise its discretion "in appropriate circumstances," to consider materials in the record which are on file but not "specifically referred to." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.2001). However, the court need not "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the moving papers with adequate references so that it could be conveniently found." *Id.*

In ruling on a motion for summary judgment, the court need not accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). "No valid interest is served by withholding summary judgment on a complaint that wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir.1989).

## V. DISCUSSION

### a. *Excessive Force*

Claims of excessive force arising "after conviction and sentence are analyzed under the Eighth Amendment's 'cruel and unusual punishment' analysis." *See Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct.

995, 117 L.Ed.2d 156 (1992); *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir.2000).

In order to prevail on his claim that Defendants used excessive force in violation of the Eighth Amendment, Plaintiff must demonstrate that Defendants' use of force was applied maliciously and sadistically for the purpose of causing harm. *See Hudson v. McMillian*, 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). This standard applies in the Eighth Amendment use of force context because:

[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance."

*Hudson*, 503 U.S. at 6, 112 S.Ct. 995 (quoting *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251(1986)). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319, 106 S.Ct. 1078. In determining whether a particular use of force was applied "in a good faith effort to restore discipline or maliciously and sadistically for the very purpose of causing harm," the court should consider such factors as the need for the use of force, the relationship between the need for force and the amount actually used, and the extent of the injury sustained by the prisoner. *See Whitley*, 475 U.S. at 321–22, 106 S.Ct. 1078.

Here it is undisputed Plaintiff was involved in a physical altercation with C/O

Bernal while being escorted to the watch office. According to the defendants, the amount of force increased when Plaintiff began resisting C/O Bernal. The encounter culminated with the use of a short burst of pepper spray to Plaintiff's face after C/O Bernal shouted "he's biting me" [Defs. Mtn., Exhibit A, p. 11]. All the incident reports consistently state that Plaintiff was struggling so violently that they were trying to restrain him enough to handcuff him and shackle his legs. Based upon the incident reports it took several officers to restrain Plaintiff until he could be subdued. [Defs. Mtn. Exhibit B, p. 12; Exhibit C, p 13; Exhibit D, p. 17; Exhibit E, p. 18; Exhibit G, p. 21–22].

Plaintiff offers unsworn and conclusory statements in his Complaint that "Lt. Shelar, Sgt. Beauchemin, C/O Clark, C/O S. Bernal, C/O Diaz, R, C/O Tablas Espinoza, R, MTA Wilson.C, all of these people were beating me up" for no reason. [Complaint at p. 8]. Plaintiff additionally claims that he was repeatedly kicked in the head and ribs so severely that he was not allowed out of Administrative Segregation until his wounds had healed to cover up the Defendants' wrong doing. [Pl. Opp. at p. 7]. In support of his claim, Plaintiff points out that the Rules Violation Report CDC–115 found him not guilty of resisting staff and battery upon a peace officer.

Plaintiff also attempts to support his claim of excessive force by pointing to the District Attorney's motion to dismiss the criminal case filed against him for assault on Officers Bernal, Lyman–Clark, and Beauchamin. [P's Opp. Exhibit H]. Plaintiff argues the District Attorney's dismissal proves he did not initiate the altercation on September 17, 2003. "Therefor this show I was not doing anything wrong if I had I would have been found guilty."(sic). [P's Opp. at p. 4]. A review of the CDC–115 report [Pl. Opp. Exhibit L] shows that the charges against Plaintiff were dismissed by the hearing officer for the following reason:

> Based on information contained in the Mental Health Assessment Form, prepared by Dr. Aramintz, it is noted that this incident was a result of Inmate Wilkins' mental health condition, in that he was not taking his prescribed medications. Additionally, it was noted that Inmate Wilkins' DDI status may have contributed to his confusion during this incident. Based on the above, and the fact that the Hearing Time Constraints were not met, the SHO elects to dismiss this CDC–115. [Plaintiff's Unmarked Exhibit p. 11].

Furthermore, in the CDC–115 ReportPart C in the section regarding the inmate's plea there is the following statement made by Plaintiff at the time of the CDC–115 hearing: "An arm was across my throat and I had to bite to breathe" [P's Opp. Exhibit L, p. 8]. This statement directly contradicts Plaintiff's earlier version of the incident.

Plaintiff's reference to the CDC–115 Rules Violation Report and the District Attorney's dismissal of the criminal charges do not create a genuine issue of material fact. Read critically, neither document contradicts the facts of the incident as reported by the correctional officers involved. Indeed, as noted previously, the findings section of the CDC–115 report concludes the confrontation with C/O Lyman–Clark and C/O Bernal escalated due primarily to Plaintiff's mental health issues. Further, the sequence of events as presented in the individual Crime/Incident Reports prepared by the officers involved is corroborated in the CDC–115 Rules Violation Report. Plaintiff provides no declarations from percipient witnesses nor any other evidence to support his claim. Similar to the CDC–115 report, nothing in the

record of the District Attorney's dismissal supports Plaintiff's allegations of unlawful excessive force.

Additionally, the Crime/Incident Reports prepared by each defendant involved in the incident are consistent with one another. Each correctional officer's written incident report concludes the amount of force used was necessary and reasonable in light of the situation. There is nothing to suggest force was applied with a sadistic and malicious intent rather than in a legitimate attempt to avoid further conflict.

The use of force plus a small amount of pepper spray in this particular context appear to have been appropriate. There is nothing to suggest Defendants used force or pepper spray on Plaintiff for any reason other than to get him to stop struggling. Under such circumstances, the use of force was reasonable and did not amount to a violation of the Eighth Amendment. *See Spain v. Procunier,* 600 F.2d 189, 195 (9th Cir.1979) (holding that the use of tear gas might legitimately be used in small quantities for preventing small disturbances from becoming dangerous to other inmates or prison personnel).

Plaintiff has failed to show any genuine issue of material fact which would allow a trier of fact to conclude that Defendants used excessive force in violation of his rights under the Eighth Amendment. Therefore, it is recommended Defendants' motion for summary judgment on this claim be **GRANTED.**

#### b. Qualified Immunity

Because the Court has found no triable issues regarding the alleged violations of Plaintiff's Eighth Amendment rights, the Court need not reach any issues regarding qualified immunity. *See County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("The

better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all."); *see also Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Therefore, it is recommended Defendants' motion for summary judgment be **DENIED** without prejudice as moot on this claim.

#### c. Warden Hernandez

In his complaint Plaintiff names Warden Hernandez as a defendant. Nowhere in the body of his complaint does Plaintiff assert any specific claim against Defendant Hernandez. For the first time in the case, Plaintiff states in his opposition to defendants' motion for summary judgment that "Warden Hernandez is over his C/Os and there training 100% See Exhibit S it will show he is over there training so there for he is responsible for them...."(sic).[P.'s Opp. at p. 8]. Plaintiff's Exhibit S is a memorandum regarding training for correctional officers on a "Monandnock Expandable Baton (MEB)." The memo is dated September 23, 2005, over two years after the incident that gave rise to Plaintiff's lawsuit. Plaintiff does not explain, and the Court does not see, the relevance of the memorandum. Other than providing conclusory allegations, Plaintiff provides no probative evidence in support of his claim.

Defendant Warden Hernandez moves for summary judgment on the ground that *respondeat superior* is not a basis for § 1983 relief. Defendants' further argue that "there is no basis for holding Warden

Hernandez liable under a theory of personal participation in the incidents in which Plaintiff claims injuries." [Defs. Mtn at p. 12]. On this basis, Defendants' argue summary judgment should be granted in favor of Warden Hernandez.

■ "Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Fayle v. Stapley,* 607 F.2d 858, 862 (9th Cir.1979). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under section 1983. *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680–81 (9th Cir.1984)." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). Here, Plaintiff has failed to show Warden Hernandez had knowledge of, participated in, or directed the alleged misconduct of Defendants. Therefore, it is recommended that Defendants' motion for summary judgment on this ground be **GRANTED.**

### d. Officer Ramirez

In his complaint, Plaintiff alleges he was assaulted in the CTC by Officer Ramirez. Plaintiff claims "I was hurt again when I was taking in to the CTC by Ramirez."(sic). Further, Plaintiff claims Officer Ramirez assaulted him "in front of the D.N.A. security investigation C/O."(sic). [Complaint at p. 7]. Plaintiff provides no additional evidence to support his claim against Officer Ramirez.

Defendants argue "there is no indication that Ramirez was in any way involved in any of the incidents giving rise to Plaintiff's complaint..." [Defs. Mtn. at p. 13].

A review of all the reports submitted both by Plaintiff and Defendants reveal no evidence regarding Officer Ramirez. As noted above, Plaintiff alleged in his initial complaint that Officer Ramirez took him to the CTC. However, Defendants' Exhibits A, D, H, and R all establish that Officer Hobbs escorted Plaintiff to the CTC. Indeed, Officer Hobbs states in his Crime/Incident Report "I was instructed by the Watch Sgt. Beauchemin to escort Inmate Wilkins to the CTC to be medically evaluated. After I/M Wilkins was evaluated I then proceeded to escort I/M Wilkins to Housing Unit 16 Ad–Seg overflow." [Defs. Mtn., Exhibit H]. This statement directly contradicts Plaintiff's version of events that he was further assaulted by Officer Ramirez in front of medical staff A. Estrella. Moreover, Officer Hobbs' statement is consistent with the other Crime/Incident Reports. Plaintiff's allegations are not supported by any evidence other than his own unverified statements.

It is well settled that to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir. 1986). Instead he must provide specific facts showing a genuine issue for trial. *Id.* More than " 'a metaphysical doubt' is required to establish a genuine issue of material fact." *Matsushita Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In the case presented here, Plaintiff has failed to present anything other than conclusory allegations with respect to his claim against Officer Ramirez. Therefore, it is recommended Defendants' motion for summary judgment in favor of Officer Ramirez be **GRANTED.**

### e. Due Process Violation–Grievance Procedure

In his Complaint, Plaintiff asserts a due process violation: "[the prison] has not answered my 602 inmate appeals regarding the incident and thay are way over-

due.(sic)" [Complaint at p. 8]. Plaintiff fails to identify a specific protected liberty interest that has been violated by the prison's alleged delay in the grievance procedure.

Defendants argue summary judgment is appropriate for this claim because it is well settled that an inmate holds no protected liberty interest in the inmate grievance procedure. *Mann v. Adams,* 855 F.2d 639 (9th Cir.1988).

The legal authority is clear—prisoners have no protected liberty interest in a particular grievance procedure. *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988); *see also Sandin v. Conner,* 515 U.S. 472, 483–485, 115 S.Ct. 2293, 132 L.Ed.2d 418(1995) ("prisoner had not federal or state protected liberty interest in due process when the alleged violation does not impose an 'atypical and significant hardship' on the inmate in relation to the ordinary incidents of prison life.").

In the absence of proof of a constitutional due process violation it is recommended Defendants' motion for summary judgment be **GRANTED**.

### f. Inadequate Medical Care

Defendants claim no genuine issues of material facts exist to show they were deliberately indifferent to Plaintiff's serious medical needs. Defendants claim Plaintiff was taken directly to the CTC for treatment after the incident.

The Eighth Amendment is violated when prison officials demonstrate "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir.1996). A deliberate indifference claim has both an objective and subjective component: "a prisoner must allege he was confined under conditions posing a risk of 'objectively, sufficiently serious' harm," and "the officials had a sufficiently culpable state of mind'" in denying the proper medical care." *Clement v. Gomez,* 298 F.3d 898, 904 (9th Cir.2002) (quoting *Wallis v. Baldwin,* 70 F.3d 1074, 1076 (9th Cir.1995) (internal quotations omitted)).

Thus, in order to avoid summary judgment, Plaintiff must first point to evidence in the record which shows an objectively "serious" medical need, i.e. the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith,* 974 F.2d 1050, 1059– 60 (9th Cir.1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (*en banc* ); *Lopez v. Smith,* 203 F.3d 1122, 1131–32 (9th Cir.2000) (*en banc* ); *see also Doty v. County of Lassen,* 37 F.3d 540, 546 (9th Cir.1994).

However, evidence in the record must also demonstrate a triable issue of fact as to the subjective component of an Eighth Amendment violation. "Deliberate indifference is evidenced only when 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Clement,* 298 F.3d at 904 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Thus, the indifference must be both deliberate and substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle,* 429 U.S. at 106, 97 S.Ct. 285, *Wood v. Housewright,* 900 F.2d 1332, 1334 (9th Cir.1990).

"This is not an easy test for [the Plaintiff] to satisfy," *Hallett v. Morgan,* 296 F.3d 732, 745 (9th Cir.2002). Nonetheless, deliberate indifference may be found if Defendants "deny, delay, or intentionally interfere with [a prisoner's serious need for] medical treatment.'" *Hamilton v. Endell,* 981 F.2d 1062, 1066 (9th Cir.1992) (quoting *Hunt v. Dental Dep't,* 865 F.2d 198, 201 (9th Cir.1989)). When the claimed indifference is based on claims of delay, however, the Eighth Amendment is not violated, unless the evidence suggest the delay was harmful. *See McGuckin,* 974 F.2d at 1060 ("[A] finding that the inmate was seriously harmed by the defendant's action or inaction tends to provide additional support to a claim that the defendant was deliberately indifferent to the prisoner's medical needs."); *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir.1985); *Hunt,* 865 F.2d at 200 ("Delay in providing a prisoner with dental treatment, standing alone, doe not constitute an Eighth Amendment violation."); *Sealock v. Colorado,* 218 F.3d 1205, 1210 (10th Cir.2000) ("Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable."). While the barm caused by delay need not necessarily be "substantial," *see Wood,* 900 F.2d at 1339–40; *McGuckin,* 974 F.2d at 1060 & n. 2, the Eighth Amendment is only violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known this to be the case." *Hallett,* 287 F.3d at 1206.

Here, Plaintiff alleges he was beaten and suffered a severe head injury on September 17, 2003, requiring treatment. [Pl. Opp.. at p. 10]. Plaintiff further alleges he did not receive treatment for his injuries until October 6, 2003: "when I was in ad-seg I requested medical help several times because of my head injury..." [Complaint at p. 8]. Plaintiff states "I did not see a doctor for eveluation (sic) or x-rays for treatment for my head." [Complaint at p. 8].

However, the Court finds no evidence in the record to show Defendants acted with "deliberate indifference" to Plaintiff's needs under these circumstances. The medical records presented show Plaintiff suffered only minor injuries that were limited to an abrasion on his right cheek, a small cut on the lower lip, and rib pain. [Defs. Mtn. Exhibit I, p. 26]. Medical Records also show Plaintiff was taken to the CTC immediately after the incident for medical evaluation and treatment. The treating medical personnel noted the Plaintiff's injuries were minor and his prognosis was good. [Defs. Mtn., Exhibit I, p. 26].

With respect to Plaintiff's allegations of head injury due to the beatings, there is no evidence of any head trauma beyond what is stated in the medical report (i.e., abrasion on cheek, and cut lip). Furthermore, subsequent visits by Plaintiff after the initial visit to the CTC shows Plaintiff had no lingering head injury from the incident. These medical reports directly contradict Plaintiff's unsupported statements that "when I was in Ad–Seg I requested medical help several times because of my head injury when I was throw to the ground and beaten."(sic). [Complaint at p. 8].

Plaintiff's unsworn allegations are not sufficient to create a genuine issue of material fact when viewed against the documents and medical records submitted by Defendants. On the following dates Plaintiff was seen by the prison medical staff:

**September 19, 2003:** Two days after the incident, Plaintiff was seen as a follow-up to his treatment for any injuries sustained from the altercation with Defendants. [Defs. Mtn. Exhibit B, p. 8].

**September 23, 2003:** Plaintiff was seen for a check-up; [Defs. Mtn., Exhibit B, p. 12].

**September 26, 2003:** Plaintiff seen for medication adjustment. Plaintiff also treated for headache. No vomiting reported. No specific head injury noted. [Defs. Mtn., Exhibit B, p. 12].

**October 6, 2003:** Plaintiff seen for medication adjustment and continued complaint of headache. [Defs. Mtn., Exhibit B, p. 14].

**October 9, 2003:** Plaintiff seen for medication adjustment. Ibuprofen prescribed for headache. [Defs. Mtn., Exhibit B, p. 15].

**November 7, 2003:** Plaintiff seen by optometrist for chronic headaches. Old scarring of right cornea is noted as probable cause of headaches. Plaintiff was to be watched carefully to see if condition resolved itself over time. [Defs. Mtn., Exhibit B, p. 16].

**December 8, 2003:** Plaintiff is followed up from 11/7/03 optometry exam. "Virtually all symptoms have stopped." [Defs. Mtn., Exhibit B, at p. 17].

**January 16, 2004:** Plaintiff has medications renewed. [Defs. Mtn., Exhibit B, p. 17].

Nowhere in these records is there any reference to a severe head injury due to the alleged beating Plaintiff claims occurred on September 17, 2003. Indeed, it appears Plaintiff was seen regularly and his self-reported medical complaints were taken seriously and treated. For example, based upon Plaintiff's complaint of recurring headaches he was referred to the optometry clinic for diagnosis, treatment and follow-up care. The records presented in this case demonstrate no "deliberate indifference" to Plaintiff's needs under these circumstances.

Here, the Court finds no genuine issues of material fact exist regarding Plaintiff's claim that Defendants' acted with deliberate disregard of a substantial risk to Plaintiff's health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, the Court recommends that Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment inadequate medical care claims be **GRANTED**.

### g. Motion to Strike Punitive Damages Claim

██ "Punitive damages are available against individual . . . officers in a § 1983 claim where the officer's 'conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' " *Dubner v. City and County of San Francisco,* 266 F.3d 959, 969 (9th Cir.2001) (citing *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1986)).

Defendants argue Plaintiff's prayer for punitive damages should be stricken from the complaint because there is no evidence demonstrating "any Defendant acted with the 'evil motive or intent,' or with 'reckless or callous indifference to the federally protected rights of others' necessary to justify Plaintiff's claim for punitive damages." [Defs. Mtn. at p. 16].

Plaintiff argues in his opposition that "Plaintiff's damages should be met . . . ." [Pl. Opp. at p. 11]. Plaintiff contends the evidence shows he was beaten up by the named correctional officers "there for this damages should not be stricken.(sic)" [Pl. Opp. at p. 11].

██ Under Rule 12(f), a party may move to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "[T]he function

of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983). " 'Immaterial matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.... 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting *5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure 2d § 1382*, at 706–11 (1990)), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

 Motions to strike are generally disfavored. *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1037 (C.D.Cal.1998). However, a motion to strike may be granted when "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D.Cal.1992); *see also Colaprico v. Sun Microsystems*, 758 F.Supp. 1335, 1339 (N.D.Cal.1991).

Here, Plaintiff is not entitled to punitive damages because the Court has found that no Eighth Amendment violations occurred. As discussed herein, Plaintiff has failed to substantiate his claims of cruel and unusual punishment on the grounds of excessive force and inadequate medical care. Accordingly, it is recommended that Defendants' motion to strike Plaintiff's request for punitive damages be **GRANTED**.

#### h. Judicial Notice

Accompanying Defendants' exhibits is a Request for Judicial Notice. Defendants' put forth a blanket request for judicial notice to cover "the complete file and records in this action" and all the exhibits "filed herewith" and "such additional matters subject to judicial notice as may be submitted by the time of the hearing in this matter." [Defs. Request for Judicial Notice at p. 1–2].

 Judicial Notice is governed by Federal Rule of Evidence 201 which governs only judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *FRE 201.* "[A] party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice." *In re Tyrone F. Conner Corporation*, 140 B.R. 771, 781 (United States Bankruptcy Court, E.D. California 1992). "To sustain its burden in persuading the trial judge that the adjudicative fact sought to be noticed is in fact proper for notice under Federal Rule of Evidence 201, the party must (1) persuade the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source 'whose accuracy cannot reasonably be questioned' ...." *Id.* at 781.

Defendants' request is overly broad. For example, the bulk of Defendants' exhibits are medical records and crime/incident reports prepared by prison staff. The existence and the content of these reports are not matters beyond dispute. *See Pina v. Henderson*, 752 F.2d 47, 50 (C.A.N.Y.1985). The information contained in the records at issue are neither "generally known within the territorial jurisdiction" nor "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Disabled Rights Action*

*Committee v. Las Vegas Events, Inc.* 375 F.3d 861, 866 (9th Cir.2004).

However, Defendants' have submitted two declarations. The first declaration is from Michael German, Deputy Attorney General in support of Exhibit A-abstracts of Judgments against Plaintiff and Exhibit B-excerpts from Plaintiff's medical records. The second is from Lt. Robert Cobb in support of Exhibits A through Exhibit R. These declarations satisfy Federal Rule of Evidence 803(3), (4), and (8), 902 and 1005. Consequently, these exhibits may be properly considered by the Court without having to take judicial notice of them pursuant to FRE 201.

Based upon the facts and law presented, it is recommended Defendants' Request for Judicial Notice be **DENIED** without prejudice.

## VI. CONCLUSION

For the reasons set for herein, it is recommended that Defendants' motion for summary judgment be GRANTED, and that Plaintiff's complaint be dismissed. This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(1988). Any party may file written objections with the Court and serve a copy on all parties by January 30, 2006. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed by February 10, 2006.

**IT IS SO ORDERED.**

Jan. 13, 2006.